CAWTHON, Senior Judge.
Reverend Donagene Mecier appeals from an order granting A. Robert Broadfoot’s motion for summary judgment. Appellant contends that Broadfoot impliedly agreed with Mecier to supervise construction of a temple and that the court erred in granting his motion for summary judgment for Bro-adfoot. We affirm in part and reverse in part.
Mecier is a licensed minister and the President of New Life Temple, Inc. Mecier alleged in her complaint that she entered into an agreement with Defendant Broad-foot, an architect, “to develop and supervise the architectural drawings for the construction of a facility to be known as the ‘New Life Temple.’ ” She stipulated that her cause of action was based on breach of an implied contract with Broadfoot. Mecier maintained that Broadfoot failed to properly design and draw detail drawings for roof flashings; improperly designed the roof, thereby creating a leak; failed to provide for roof venting; failed to provide for adequate heat and air-conditioning duct work; and generally failed to produce professional architectural plans. Finally, she claimed that she performed all the conditions required of her under the contract, and that she was required to spend additional monies to repair the damage caused by Broadfoot’s breach, for which she demands damages.
In her deposition, Mecier testified that she originally entered into a contract with architect Robert Platt, which “was given to Broadfoot to finish.” She explained that Broadfoot “was supposed to have an agree *160 ment with Mr. Platt to continue that work and he was continuing it,” although that agreement was never discussed with her and she indicated that she “didn’t have any choice.”
Mecier stated that she entered into a construction management contract with defendant The Stokes Group, Inc., at the urging of Broadfoot, although Broadfoot did not enter into the negotiations or receive compensation for the referral.[1] She added that she never paid monies to Broadfoot, and that Broadfoot instructed her to pay Platt. Later, counsel returned to the subject of the alleged contract, and asked:
Q. Did you ever engage my client to supervise the construction of the New Life Temple, hire him to supervise the construction?
A. No.
Q. Okay. Did you ever have an agreement, either a written or a verbal, with my client that he would supervise the construction of this facility?
A. The assumption is that — the assumption is that the architect does watch—
[[Image here]]
A. —watch over a process that he begins, that he should know.
[[Image here]]
Q. Did he make — did my client make any statement to you regarding him supervising or inspecting the construction? A. I don’t think so. I didn’t enter any agreement with him to do it. However, I do think he assumed the responsibility with Mr. Stokes.
Although she denied asking Broadfoot to supervise or inspect Mr. Stokes’s construction, she argued that their relationship “looked like they were working together.”
On cross-examination Mecier testified that Broadfoot told her that he was going to finish the drawings for the church building. Her contract, she stated, was with Mr. Platt to draw the plans, for which he was paid. Mecier believed that Broadfoot had a fee arrangement with Mr. Platt, because “[h]e was certainly not doing it free.”
Broadfoot filed a motion for final summary judgment, contending that the complaint failed to allege that Broadfoot agreed to supervise construction of the building, that Mecier specifically testified in her deposition that no such contract existed between the parties, and that the alleged building defects were corrected with Mecier’s permission and without cost to her. Mecier then filed an affidavit, in which she averred:
Based on conversations and actions taken of Mr. Broadfoot it was my understanding that he was to complete the drawings and to assist in the supervision of the construction of our church, The New Life Temple... .[2]
She added that she repaired the complained-of defects, which are as yet uncompensated. The trial court granted Broad-foot’s motion after argument.
The supervision of construction can be separated from the completion of the plans. While appellant clearly did not have a contract with Broadfoot for supervision of construction, a genuine issue of material fact exists on the issue of whether there was an implied contract between Me-cier and Broadfoot regarding completion of the plan. Where reasonable men might justifiably make different inferences and deductions to reach different conclusions as to whether a genuine issue of material fact exists, the issue should be submitted to the jury. See Gulf Power Co. v. Cox Cable Corp., 570 So.2d 379, 381 (Fla. 1st DCA 1990); Tri-City Used Cars, Inc. v. Grim, 566 So.2d 922 (Fla. 1st DCA 1990); Connell v. Sledge, 306 So.2d 194 (Fla. 1st DCA 1975). As this court stated in Connell at 196:
A summary judgment may be granted only in cases where there is no issue of material fact.... The allegations of the *161 complaint (when the defendant moves for summary judgment) must be accepted, for the purposes of the motion, as true.... The burden is upon the party moving for summary judgment to establish that there is no issue of material fact and that he is entitled to a judgment as a matter of law_ If the pleadings, depositions, answers to interrogatories admissions, affidavits and other evidence in the file raise the slightest doubt upon any issue of material fact then a summary judgment may not be entered, (citations omitted)

Accord, Gulf Power Co. v. Cox Cable Corp., supra; Tri-City Used Cars, Inc. v. Grim, supra.

In the instant case, appellees failed to establish the absence of any issue of material fact. Appellant’s deposition raises sufficient doubt as to whether an implied contract was in existence. Contracts implied in fact are inferred from the facts and circumstances of the case. Instructive on the issue of implied contracts is Bromer v. Florida Power & Light Co., 45 So.2d 658, 660 (Fla.1949) which states:
This Court should determine and give to the alleged implied contract ‘the effect which the parties, as fair and reasonable men, presumably would have agreed upon, if having in mind the possibility of the situation which has arisen, they had contracted expressly in reference thereto.’ 12 AmJur. 766.
See also, Rothman v. Gold Master Corp., 287 So.2d 735 (Fla. 3d DCA 1974) (where agreement expires by its terms and without more parties continue to perform as before, implication arises that the parties have mutually assented to new contract containing same provisions as old, and existence of such contract is determined by whether a reasonable man would think parties intended to make such new binding agreement).
Appellant testified by deposition that Broadfoot was given a copy of the plans by Platt and began working on them. Broad-foot discussed the plans with her and told her that he was going to finish the drawings for the church building. For the next three years, appellant had contact with Broadfoot rather than Platt regarding the plans. Appellant indicated that Broadfoot directed her to continue paying Platt for the plans. Based on appellant’s deposition and Broadfoot’s continued performance of Platt’s expressed contract to draw the plans, there is a genuine issue of material fact as to whether reasonable men could conclude that the parties intended to make a binding contract. Accordingly, the order granting summary judgment is affirmed on the issue of whether there was an implied contract as to the supervision of construction and reversed on the issue of whether there was an implied contract regarding the completion of the plans. The cause is remanded to the trial court for further proceedings consistent herewith.
ERVIN and WIGGINTON, JJ., concur.

. The terms of that contract are not challenged in this appeal.

. Mecier states that she engaged Richard L. Hardy, Inc. and Barch & Associates, Inc. to inspect the premises after the construction was corn-pleted, and numerous leaks and problems were encountered. She states that their opinions are attached to the affidavit; however, no such opinions appear in the record.