695 So.2d 383 (1997)
COMMERCE PARTNERSHIP 8098 LIMITED PARTNERSHIP and Forest-English, Inc., its General Partner, Appellants,
v.
EQUITY CONTRACTING COMPANY, INC., Appellee.
No. 95-2619.
District Court of Appeal of Florida, Fourth District.
March 26, 1997.
As Modified on Grant of Clarification June 4, 1997.
*384 James M. Painter of Law Offices of James M. Painter, P.A., Boca Raton, for appellants.
David J. Schottenfeld of David J. Schottenfeld, P.A., Plantation, for appellee.

EN BANC
GROSS, Judge.
Equity Contracting Company, Inc.("Equity") filed a one-count complaint against Commerce Partnership 8908 Limited Partnership ("Commerce"). The count was set forth under the heading "Quantum Meruit." The complaint contained the following allegations:
Commerce was the owner of an office building. Commerce contracted with a general contractor, World Properties, Inc., to perform improvements on its property. Equity was the stucco and surfacing subcontractor for the job, having contracted with the general contractor to perform the work. Because it inspected the job on a weekly basis, Commerce was aware of Equity's work. Equity completely performed its subcontract and the reasonable value of its work was $17,100. Commerce failed to pay the general contractor the full amounts due for the job. The general contractor did not pay Equity. Commerce was unjustly enriched because it had accepted Equity's services without paying any entity for them.
*385 In its answer, Commerce asserted that it had paid the general contractor in full.
At the non-jury trial, Equity presented its direct case in under 30 minutes. Equity's president testified that his company had contracted with the general contractor to stucco Commerce's property for $17,100. He indicated that at the start of the job he expected payment only from the general contractor and not from Commerce. Both the general contractor and a representative from Commerce inspected the work as it progressed. After the work was completed, Commerce gave Equity a punch list of remedial work. When Equity's president asked for at least partial payment from Commerce, the latter's representative indicated that "he couldn't do it." Having received no payment, Equity did not complete the punch list. Equity brought suit against the general contractor, who later declared bankruptcy. Equity adduced no evidence regarding Commerce's payments to the general contractor under the construction contract or to any other party for work covered by the contract.
After Equity rested, Commerce moved for an involuntary dismissal, arguing that the evidence did not establish a contract implied in fact. Commerce's attorney contended that the term "quantum meruit" was synonymous with a contract implied in fact. The trial court denied the motion. During closing argument, Equity asserted that it had established a claim for quantum meruit, which it interpreted to mean unjust enrichment. Arguing that a quasi contract claim had first been injected into the case during closing argument, Commerce's attorney obtained permission to reopen his case. By this point in the trial, there was no agreement as to the cause of action at issue or the requirements of proof. The trial judge observed, "[w]e are in equity and I have some difficulty with wondering what the issues are and who is going to prove what."
Commerce's witness testified that the contract price it had negotiated with the general contractor for the improvements was $256,894. He identified three payments totalling $223,065.04 that Commerce made to the general contractor$173,088.07 in progress payments, $24,976.97 in response to application for payment number 8, and $25,000 in final settlement of the general contractor's lawsuit against Commerce. Commerce also sought to introduce evidence that it had paid $64,097 directly to three subcontractors who had performed work on the building, who were not paid by the general contractor, and who had perfected mechanics' liens. The trial court sustained Equity's objection to this testimony on the ground of relevance.
Relying on Zaleznik v. Gulf Coast Roofing Co., Inc., 576 So.2d 776 (Fla. 2d DCA 1991), the trial court entered judgment in favor of Equity for $17,100.

Contract Implied in Fact and Quasi Contract
This case is a paradigm for the confusion that often surrounds the litigation of implied contracts.
A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words. 17 Am.Jur.2d "Contracts" § 3 (1964); 1 Arthur Linton Corbin, Corbin on Contracts §§ 1.18-1.20 (Joseph M. Perillo ed. 1993). Where an agreement is arrived at by words, oral or written, the contract is said to be "express." 17 Am.Jur.2d "Contracts" at § 3. A contract implied in fact is not put into promissory words with sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement. Id.; 3 Corbin on Contracts § 562 (1960). It is to this process of defining an enforceable agreement that Florida courts have referred when they have indicated that contracts implied in fact "rest upon the assent of the parties." Policastro v. Myers, 420 So.2d 324, 326 (Fla. 4th DCA 1982); Tipper v. Great Lakes Chemical Co., 281 So.2d 10, 13 (Fla.1973). The supreme court described the mechanics of this process in Bromer v. Florida Power & Light Co., 45 So.2d 658, 660 (Fla.1950):
[A] [c]ourt should determine and give to the alleged implied contract "the effect which the parties, as fair and reasonable men, presumably would have agreed upon if, having in mind the possibility of the *386 situation which has arisen, they had contracted expressly thereto." 12 Am.Jur. 766.
See Mecier v. Broadfoot, 584 So.2d 159, 161 (Fla. 1st DCA 1991).
Common examples of contracts implied in fact are where a person performs services at another's request, or "where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances" fairly raising the presumption that the parties understood and intended that compensation was to be paid. Lewis v. Meginniss, 30 Fla. 419, 12 So. 19, 21 (1892); Tipper, 281 So.2d at 13. In these circumstances, the law implies the promise to pay a reasonable amount for the services. Lewis, 12 So. at 21; Lamoureux v. Lamoureux, 59 So.2d 9, 12 (Fla.1951); A.J. v. State, 677 So.2d 935, 937 (Fla. 4th DCA 1996); Dean v. Blank, 267 So.2d 670 (Fla. 4th DCA 1972); Solutec Corp. v. Young & Lawrence Assoc., Inc., 243 So.2d 605, 606 (Fla. 4th DCA 1971).
A contract implied in law, or quasi contract, is not based upon the finding, by a process of implication from the facts, of an agreement between the parties. A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct. 1 Corbin on Contracts § 1.20; Tipper, 281 So.2d at 13. The fiction was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation. Tipper, 281 So.2d at 13; Variety Children's Hosp. v. Vigliotti, 385 So.2d 1052, 1053 (Fla. 3d DCA 1980).
The elements of a cause of action for a quasi contract are that: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it. Hillman Const. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. 4th DCA 1994); Henry M. Butler, Inc. v. Trizec Properties, Inc., 524 So.2d 710, 711-12 (Fla. 2d DCA 1988). Because the basis for recovery does not turn on the finding of an enforceable agreement, there may be recovery under a contract implied in law even where the parties had no dealings at all with each other. See Variety Children's Hosp., 385 So.2d at 1053. This is unlike a contract implied in fact which must arise from the interaction of the parties or their agents.
To describe the cause of action encompassed by a contract implied in law, Florida courts have synonymously used a number of different terms"quasi contract,"[1] "unjust enrichment,"[2] "restitution,"[3] "constructive contract,"[4] and "quantum meruit."[5] This profusion of terminology has its roots in legal history. Concerned about the confusion between contracts implied in law and fact, two legal scholars sought to "extirpate the term `contract implied in law' from legal usage and to substitute for it the term `quasi contract'." 1 Corbin on Contracts § 1.20. As Corbin explains, although the term "quasi contract" took hold, "the older term successfully resisted extirpation to the further confusion of law students and lawyers." Id.
The term "quantum meruit" derives from common law forms of pleading. The action *387 of assumpsit was available for the "recovery of damages for the breach or non-performance of a simple contract ... or upon a contract implied by law from the acts or conduct of the parties." Hazen v. Cobb, 96 Fla. 151, 117 So. 853, 857 (1928). There were two divisions of assumpsit, general, upon the common counts, and special. Id. In general assumpsit, on the common counts, only an implied contract could be the basis of the action. Id. The common counts were "abbreviated and stereotyped statements" that the defendant was indebted to the plaintiff for a variety of commonly recurring reasons, such as goods sold and delivered or work and labor done. 1 Corbin on Contracts § 1.18. The count asking judgment for work done was quantum meruit; for goods sold the count was quantum valebant. Id. The common counts were used to enforce contracts implied both in law and in fact. Because so many quasi contract actions were brought in the common counts, and because courts and lawyers were not careful to draw the distinction, the term "quantum meruit" is often used synonymously with the term "quasi contract." Id. at § 1.20.
At trial in this case, Commerce's attorney understood "quantum meruit" to mean a contract implied in fact. Equity and the trial court were proceeding under a theory of quasi contract. This confusion over "quantum meruit" is understandable, since there are cases to support both positions. For example, in Rite-Way Painting & Plastering, Inc. v. Tetor, 582 So.2d 15, 17 (Fla. 2d DCA), review dismissed, 587 So.2d 1329 (Fla. 1991), the court noted that "contracts implied in fact, such as an action in quantum meruit, require the consent of the parties." Similarly, in Dean v. Blank, 267 So.2d 670, 671 (Fla. 4th DCA 1972), when this court characterized the action as an "assumpsit on a quantum meruit," we were referring to a contract implied in fact. On the other hand, Aldebot v. Story, 534 So.2d 1216, 1217 (Fla. 3d DCA 1988), declares that "[q]uantum meruit describes the extent of liability on a contract implied in law." This court, in Maloney v. Therm Alum Industries, Corp., 636 So.2d 767, 769 (Fla. 4th DCA), rev. denied, 645 So.2d 456 (Fla.1994), used the term "quantum meruit" synonymously with "unjust enrichment." One case, Tobin & Tobin Insurance Agency, Inc. v. Zeskind, 315 So.2d 518 (Fla. 3d DCA 1975), suggests that the test for a quasi contract is the one appropriate for a contract implied in fact"whether or not... services were performed under circumstances in which the parties understood and intended that compensation was to be paid." Id. at 520.
The blurring of the distinction between contract implied in fact and quasi contract has been exacerbated by the potential for both theories to apply to the same factual setting. For example, a common form of contract implied in fact is where one party has performed services at the request of another without discussion of compensation. These circumstances justify the inference of a promise to pay a reasonable amount for the service. The enforceability of this obligation turns on the implied promise, not on whether the defendant has received something of value. A contract implied in fact can be enforced even where a defendant has received nothing of value.
However, where there is no enforceable express or implied in fact contract but where the defendant has received something of value, or has otherwise benefitted from the service supplied, recovery under a quasi contractual theory may be appropriate. See Lamborn v. Slack, 107 So.2d 277 (Fla. 2d DCA 1958) (in which the court found a contract implied in fact but discussed the issue using quasi contractual principles). When properly raised in the pleadings, this overlapping of theories may require a fact finder to view the facts as they might apply to both. 3 Corbin on Contracts § 561(1960).
Contrary to Commerce's belief at trial, Equity was asserting a quasi contract claim against it, not a contract implied in fact.

A Subcontractor's Quasi Contract Action Against an Owner
In Maloney, 636 So.2d at 767, this court considered the availability of a quasi contract theory to a construction subcontractor seeking recovery against an owner of property, where there had been no dealings between the owner and the subcontractor. Pursuant to a contract with the general contractor, the *388 subcontractor in Maloney furnished glass walls, windows and doors for the construction of an office building. The subcontractor was not paid in full for its work. The general contractor and subcontractor submitted their claims against each other to arbitration. In the circuit court action, the subcontractor sought to recover damages against the owner on a quasi contract theory. Id. at 768. Relying on two out-of-state cases, this court held that a subcontractor could maintain a quasi contract action against an owner, provided that it pled and proved two elements to establish that the enrichment of the owner was unjustthat the subcontractor had exhausted all remedies against the general contractor and still remained unpaid and that the owner had not given consideration to any person for the improvements furnished by the subcontractor. Id. at 769-70. We quoted the following passage from Paschall's Inc. v. Dozier, 219 Tenn. 45, 407 S.W.2d 150, 155 (1966):
The most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust. Consequently, if the landowner has given any consideration to any person for the improvements, it would not be unjust for him to retain the benefit without paying the furnisher. Also, we think that before recovery can be had against the landowner on an unjust enrichment theory, the furnisher of the materials and labor must have exhausted his remedies against the person with whom he had contracted, and still has not received the reasonable value of his services.
Id. 636 So.2d at 770. Maloney reversed the judgment for the contractor based upon quasi contract because the status of the subcontractor's arbitration claim with the general contractor was not established at trial. Under these circumstances, we held that it was "premature and therefore improper to permit the subcontractor to pursue" a quasi contract claim against the owner. Id. at 769.
In Gene B. Glick Co., 651 So.2d at 190, we affirmed a judgment in favor of a property owner who had been sued by a subcontractor on a quasi contract theory. We held that an unjust enrichment cannot exist "where payment has been made for the benefit conferred." The payment to which we referred was the owner's payment to the general contractor on the construction contract. See Yates v. Bernard's Carpet and Draperies, Inc., 481 So.2d 515 (Fla. 4th DCA 1985); Seegers v. Sprague, 70 Wis.2d 997, 236 N.W.2d 227 (1975). We observed in Yates that while it may be unjust that a subcontractor was not paid for its services, that injustice was not visited upon the subcontractor by the owner who paid the general contractor in full, but by the general contractor who hired the sub. 481 So.2d at 516. The law of quasi contract does not require an owner to pay twice.
There is language in Maloney which can be read to suggest that we imposed a third limitation on the ability of a subcontractor to maintain a quasi contract claim against an owner. Maloney quotes two paragraphs from Construction and Design Law § 8.8C.1(1989), which include the following sentence:
First, the subcontractor may not recover an equitable remedy if he has failed his legal remedies, such as a statutory mechanic's lien.
636 So.2d at 770. We expressly recede from this statement in Maloney because it is without support in Florida law.
Florida's construction lien statute does not purport to be the exclusive remedy for a lienor, such as a subcontractor, against an owner. Section 713.30, Florida Statutes (1995), provides that the construction lien part of Chapter 713 "shall be cumulative to other existing remedies." The plain language of the statute does not supersede any remedies available to a party seeking payment. St. Regis Paper Co. v. Quality Pipeline, Inc., 469 So.2d 820, 822-23 (Fla. 2d DCA 1985). Applying section 713.30, the third district rejected the argument that a materialman's failure to perfect a statutory lien left it without any remedy to recover for materials which it had furnished to a construction project. Peninsular Supply Co. v. C.B. Day Realty of Florida, Inc., 423 So.2d 500, 501-02 (Fla. 3d DCA 1982). As the Peninsular Supply court observed:

*389 The purpose of the Mechanics' Lien Law is to prevent an owner from being obligated to pay for an improvement more than once. It was not intended, nor shall we interpret it to permit an unjust enrichment.
Id. at 503 (citations omitted).
At least three Florida cases have allowed subcontractors who failed to perfect their liens to nonetheless maintain a quasi contract action against an owner. In Zaleznik, the second district upheld a roofing subcontractor's unjust enrichment judgment against an owner, where the subcontractor had not perfected its mechanics' lien because of its failure to timely serve the notice to owner. 576 So.2d at 778-80. Similarly, in Capital Construction Services, Inc. v. Rubinson, 541 So.2d 748 (Fla. 3d DCA 1989), the third district permitted a home improvement subcontractor to bring an unjust enrichment claim against an owner, even though it had failed to perfect its lien because of a failure to serve a notice of claim on the owner. See Rite-Way Painting & Plastering, Inc., 582 So.2d at 17-18.
The two out-of-state cases upon which we relied in Maloney both allowed quasi contractual recovery where a subcontractor had neglected to perfect a mechanics' lien. The subcontractor in Paschall's, Inc. failed to comply with Tennessee's statutory requirements for maintaining a mechanic's lien. 219 Tenn. 45, 407 S.W.2d at 152. The materialman in Tum-A-Lum Lumber v. Patrick, 95 Or.App. 719, 770 P.2d 964 (1989), could have filed a construction lien but did not. The Oregon appellate court reversed a judgment for the contractor, not because of the failure to pursue a lien remedy, but because the materialman did not allege and prove that it had exhausted its remedies against the general contractor. Id., 770 P.2d at 965.
Drawn from Paschall's, Inc. and Tum-A-Lum, the two requirements that Maloney imposes on a subcontractor's quasi contract action against an ownerexhaustion of remedies against the contractor and the owner's receipt of the benefit conferred without paying consideration to anyonelimit the cause of action to those situations where the enrichment of the owner is truly unjust when compared to the uncompensated subcontractor. The contractor with whom the subcontractor is in privity is always the pocket of first resort. Moreover, the owner can be liable only where it received a windfall benefit, something for nothing.
By our reliance on Paschall's, Inc. and Tum-A-Lum, we intended in Maloney to align ourselves with that line of cases which allow a subcontractor's recovery in quasi contract against an owner, even where the subcontractor has failed to perfect its construction lien. Karon v. Kellogg, 195 Minn. 134, 261 N.W. 861 (1935); Ayotte Bros. Constr. Co. v. Finney, 42 Conn.App. 578, 680 A.2d 330 (1996); Costanzo v. Stewart, 9 Ariz.App. 430, 453 P.2d 526 (1969); Rees, Weaver & Co. v. M.B.C. Paper Mill Corp., 267 Pa.Super. 148, 406 A.2d 562 (1979); International Paper Co. v. Futhey, 788 S.W.2d 303, 306 (Mo. App.1990); Kazmier v. Thom, 63 Ohio App.2d 29, 408 N.E.2d 694 (1978); see Pendleton v. Sard, 297 A.2d 889, 895 (Me.1972).
Significantly, the rationales which underlie many of the cases making a construction lien the exclusive remedy of a subcontractor not in privity with an owner have no application in Florida. The construction lien statutes of some states preclude, or have been construed to preclude, the maintenance of a quasi contract claim. See Donnybrook Building Supply Co., Inc. v. Alaska Nat'l Bank of the North, 736 P.2d 1147, 1153-54 (Alaska 1987); Season Comfort Corp. v. Ben A. Borenstein Co., 281 Ill.App.3d 648, 211 Ill.Dec. 682, 655 N.E.2d 1065 (1995). Florida's construction lien statute contains no similar limitation on a lienor's potential remedies. Other cases are based in large part on the failure of a subcontractor to prove one of the elements necessary to a subcontractor's quasi contract claim. See Guldberg v. Greenfield, 259 Iowa 873, 146 N.W.2d 298, 305 (1966) (owner paid prime contractor in full); Seegers v. Sprague, 70 Wis.2d 997, 236 N.W.2d 227, 231 (1975) (owner's payments to general contractor did not leave him "enriched"); Morrisville Lumber Co. v. Okcuoglu, 148 Vt. 180, 531 A.2d 887 (1987).
Finally, some cases rely on the principle that there can be no remedy in equity when the lien statute provides an adequate remedy at law. Southtown Plumbing, Inc. v. Har-Ned *390 Lumber Co., Inc., 493 N.W.2d 137 (Minn.App.1992); Season Comfort Corp., 211 Ill.Dec. 682, 655 N.E.2d at 1071. These cases turn on the determination that unjust enrichment is an equitable cause of action. However, in Florida, as was demonstrated above, all implied contract actions were part of the action of assumpsit, which was an action at law under the common law. E.g., Boyce Constr. Corp. v. District Bd. of Trustees, 414 So.2d 634, 637, n. 1 (Fla. 5th DCA 1982); Carter v. Suggs, 190 So.2d 784, 788 (Fla. 1st DCA 1966). Although some Florida courts have described quasi contracts as being "equitable in nature," e. g., Gene B. Glick Co., Inc., 651 So.2d at 190, the term has been used in the sense of "fairness," to describe that quality which makes an enrichment unjust, and not as a reference to the equity side of the court.

Reversal is Required Under the Facts of this Case
In this case, Equity did not prove at trial that Commerce had not made payment to any party for the benefits conferred on the property by Equity. This was not an affirmative defense, but an essential element of a quasi contract claim by a subcontractor against an owner. See International Paper Co., 788 S.W.2d at 306. Had Commerce moved for an involuntary dismissal on this ground, the motion should have been granted. Contrary to the trial court's evidentiary ruling, Commerce's attempt to prove that it had paid $64,097 directly to subcontractors for work on the building was relevant to issues in this case. What Commerce expended on this project was central to Equity's cause of action. Commerce contended that these payments were for work covered under the construction contract for which the subcontractors had not been paid by the general contractor. If the $64,097 is added to the $256,894 that Commerce paid to the general contractor, then the total amount Commerce spent on the project exceeded the contract price for the improvements. As we have observed, where an owner has given consideration for the subcontractor's work by paying out the contract price for the work, an unpaid subcontractor's claim that the owner has been unjustly enriched must fail.
The trial court's reliance on Zaleznik was misplaced. In that case it was undisputed that the owner received over $70,000 in construction work for which it paid no one. What Commerce paid out on this project was not fully litigated below, so whether its "enrichment" was "unjust" is an open question.
The judgment appealed is reversed, and the cause is remanded to the trial court to take additional evidence from the parties on whether Commerce made payment to or on behalf of its general contractor covering the benefits Equity conferred on the subject property. Equity shall have the burden of proving its claim of a contract implied in law that Commerce has failed to make such payment by the greater weight of the evidence. If the court shall determine that Commerce has not paid anyone for the benefits conferred by Equity, then it shall enter judgment for Equity; correspondingly, if the court shall determine that Equity has failed to prove that Commerce did not make such payment, then the court shall enter judgment for Commerce.
GUNTHER, C.J., and GLICKSTEIN, DELL, STONE, WARNER, POLEN, FARMER, KLEIN, PARIENTE, STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] Variety Children's Hospital, 385 So.2d at 1053; Tipper, 281 So.2d at 13; Policastro, 420 So.2d at 326; Nursing Care Servs., Inc. v. Dobos, 380 So.2d 516, 518 (Fla. 4th DCA 1980).
[2] Gene B. Glick Co., Inc. v. Sunshine Ready Concrete Co., 651 So.2d 190 (Fla. 4th DCA 1995); Hillman Constr., 636 So.2d at 577; Zaleznik, 576 So.2d at 778; Henry M. Butler, Inc., 524 So.2d at 710; Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, 520 So.2d 323 (Fla. 3d DCA 1988); Coffee Pot Plaza Partnership v. Arrow Air Conditioning & Refrigeration, Inc., 412 So.2d 883, 884 (Fla. 2d DCA 1982).
[3] Yates v. Bernard's Carpet and Draperies, Inc., 481 So.2d 515, 516 (Fla. 4th DCA 1986).
[4] Policastro, 420 So.2d at 326; Gilman Yacht Sales, Inc. v. First Nat'l Bank of Chicago, 600 So.2d 1131, 1135 (Fla. 4th DCA 1992).
[5] Maloney v. Therm Alum Industries, 636 So.2d 767 (Fla. 4th DCA), rev. denied, 645 So.2d 456 (Fla.1994); Fred McGilvray, Inc. v. Delphian Group, Inc., 424 So.2d 891 (Fla. 3d DCA 1982).