[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/17/99
THOMAS K. KAHN
CLERK**

_____

No. 98-3183
_____

D.C. Docket No. 96-9-CivT-26(B)


TOOLTREND, INC., a Florida
Corporation, d.b.a. CMT Tools,

                              Plaintiff-Counter-defendant-Appellant,


versus

CMT UTENSILI, SRL, an
Italian Company, CMT USA,
INC., a North Carolina corporation,


                              Defendants-Counter-claimants-Appellees.


_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(December 17, 1999)**


Before CARNES and BARKETT, Circuit Judges, and PAINE*, Senior District Judge.

_____
* Honorable James C. Paine, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.


BARKETT, Circuit Judge:

Tooltrend, Inc. ("Tooltrend") appeals from the district court's order vacating a jury verdict in its favor for $1,741,993 against its former business associates CMT Utensili and CMT USA (collectively "Utensili"). The jury award was based on Tooltrend's claim of unjust enrichment in a dispute between the parties involving the ownership of three separate trademarks. The district court vacated the award of damages and entered judgment in favor of Utensili, and, alternatively, granted Utensili's motion for a new trial. On appeal, Tooltrend argues that the district court misconstrued the Florida law of unjust enrichment, and therefore erred in vacating the jury's verdict. In the alternative, Tooltrend argues that rather than vacating the verdict or granting a new trial, the district court should have remitted the jury's verdict to $636,011.

**Background**

Tooltrend is a Florida-based company which has sold cutting tools for the woodworking industry since 1991. Utensili is an Italian company which has manufactured woodworking tools from its facility in Pesaro, Italy, since 1964. Sometime in 1991, Tooltrend and Utensili agreed that Tooltrend would become the United States distributer of the router bits manufactured by Utensili. With the agreement of Utensili, Tooltrend sold these Utensili router bits in the United States under the name "CMT Tools." Thus, "CMT" was featured in all of Tooltrend's

2

advertisements and catalogues and Tooltrend used a distinctive orange fruit logo to call attention to the router bits which were orange in color.

In October 1995, the relationship between Tooltrend and Utensili ended. Tooltrend claimed that Utensili was not adequately supplying Tooltrend with products and was imposing unwarranted price increases. Utensili claimed that Tooltrend was not paying in a timely manner. After the relationship between the parties terminated, Utensili's owners set up its own separate company, CMT USA, to distribute its products directly in this country. Thus, as of December 1995, Tooltrend and Utensili were both selling identical products under business names which both included "CMT."

In January 1996, Tooltrend filed this lawsuit alleging, among other things, Lanham Act violations regarding the orange color on the router bits, the name "CMT Tools," and the orange fruit logo. Tooltrend also sought an injunction to keep Utensili from selling woodworking tools under these marks. Utensili filed a counterclaim asserting ownership to the "CMT," "orange color on router bits," and the orange fruit logo trademarks. In an amended complaint, Tooltrend added causes of action for copyright infringement and unjust enrichment, asserting that if Utensili were declared the owner of the "CMT" and the "orange color on router bits" marks, Utensili would

3

have been unjustly enriched by Tooltrend's advertising and promotional efforts regarding the router bits. Tooltrend claimed unjust enrichment damages of $636,011.

Ultimately, Utensili, which had registered the CMT name in Italy in 1972, was deemed to be the owner of the CMT mark and of the orange-color-on-router-bits trademark,[1] and Tooltrend was deemed to be the owner of the orange fruit logo. The jury then determined that Utensili had not suffered any damages, but that Tooltrend was entitled to $1,741,993 on its unjust enrichment claim.[2]

After the jury verdict, the trial judge granted Utensili's motion for judgment as a matter of law, dismissing Tooltrend's unjust enrichment claim, and, alternatively, granting Utensili's motion for a new trial, thus setting aside the damage award. Tooltrend now appeals. We review *de novo* a trial court's order granting judgment as a matter of law. See Ortega v. Schramm, 922 F.2d 684, 694 (11th Cir. 1991).

To grant judgment as a matter of law, the court must determine that there is such overwhelming evidence in favor of the movant that a reasonable and fair-minded juror could not arrive at a contrary verdict. See Carter v. City of Miami, 870 F.2d

---

[1] Utensili had used an orange color since 1972 on its logo, invoices, communications, products and packaging, and has used an orange color on its products since the beginning of the 1980s.

[2] Tooltrend's evidence on damages was that from 1991 to 1996, Tooltrend paid approximately $589,000 for advertising, $1,150,000 for catalogue promotion, approximately $50,000 on free samples, and $77,000 for advertising at trade shows.

578, 581 (11th Cir. 1989) (citing <u>Miles v. Tennessee River Pulp & Paper Co.</u>, 862 F.2d 1525 (11th Cir. 1989)). Federal Rule of Civil Procedure 50, under which this motion was submitted, "allows the court to take away from the jury's consideration cases or issues when the facts are sufficiently clear that the law requires a particular result." 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil2d § 2521 (1994). "A motion for a directed verdict, or for a judgment notwithstanding the verdict under Rule of Civil Procedure 50, 28 U.S.C.A., raises a question of law only: Whether there is any evidence which, if believed, would authorize a verdict against movant. The trial judge in considering those motions does not exercise discretion, but makes a ruling of law . . . ." <u>Marsh v. Illinois Cent. R. Co.</u>, 175 F.2d 498, 500 (5th Cir. 1949).[3]

## Discussion

The district court found that Tooltrend was not entitled to recover on a theory of unjust enrichment because Tooltrend's activities promoting Utensili's trademarks "were conducted to promote . . . [Tooltrend's] own business and without any expectation of compensation." (Dist. Ct. Op. at 1). On appeal, Tooltrend argues that the district court erred by confusing the separate legal doctrines of quantum meruit

---

[3] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

5

and unjust enrichment.  Tooltrend argues that, because its claim is based on a contract implied in law, it is entitled to recover regardless of its expectation of compensation, and that the district court therefore misconstrued the law.

We first turn to the elements of an unjust enrichment claim in the State of Florida.  A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a "contract" as a mater of law.  Although the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, "create" an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it.  It derives, not from a "real" contract but a "quasi-contract."  See Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., 695 So.2d 383, 386 (Fla. Dist. Ct. App. 1997) (en banc).   To succeed in a suit for unjust enrichment a plaintiff must prove that:

> (1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

 See Greenfield v. Manor Care, Inc., 705 So. 2d 926, 930-31 (Fla. Dist. Ct. App. 1997), rev. denied, 717 So. 2d 534 (Fla. 1998).

6

By contrast, the remedy of quantum meruit derives from contracts "implied in fact." In these contracts, the parties have in fact entered into an agreement but without "sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement . . . . [in order to give] the effect which the parties . . . presumably would have agreed upon if, having in mind the possibility of the situation which has arisen, they had contracted expressly thereto." Commerce, 695 So.2d at 385-86 (internal quotation marks omitted).[4]

In this case, Tooltrend disavows a claim of quantum meruit, or contract implied in fact. Tooltrend specifically concedes that its claim does not derive from any words or actions of the parties. Hence, the question before us is whether we should imply or "create" a contract in law on the basis that it would be unjust for Utensili to have received the benefit of advertising and promotion without paying compensation to Tooltrend. As recognized by the trial court, "[t]he essence of the [unjust enrichment] claim seems to be that Tooltrend spent money and effort promoting the trademarks of

---

[4] As Judge Gross writing for the en banc court recognized, confusion in this area arises because some courts have used some of these terms inappropriately and have on occasion improperly connected remedial terms to the wrong theory. For example, using quantum meruit improperly in connection with a contract implied in law as opposed to a contract implied in fact where it belongs, or conversely, using the term "unjust enrichment" in connection with a cause of action for a contract implied in fact from the conduct of the parties. See Commerce, 695 So.2d at 385-86; see also 66 Am. Jur.2d Restitution and Implied Contracts § 166 (1999) (noting that "[q]uantum merit . . . is an ambiguous term," at times used to refer to contracts implied in fact and at others to refer to unjust enrichment).

'CMT' and the orange color on router bits, and that[, as] owner of those trademarks, Utensili has been unjustly enriched by the enhanced value of those properties . . . ." (Dist. Ct. Op. at 7).

In deciding that Tooltrend was not entitled to relief, the trial court appeared to rule that the elements of an unjust enrichment claim must include the plaintiff's expectation of compensation, and in its brief, Utensili emphasizes this position. Tooltrend argues that appending another element to Florida's law of unjust enrichment is legally improper. Implicit in Utensili's argument that an expectation of compensation is a necessary component of every unjust enrichment claim is that such an expectation must be found from the conduct or the words of the parties. However, Florida courts have made clear that an unjust enrichment claim may be brought whether or not the parties had any previous contact at all. See Commerce, 659 So.2d at 386 ("Because the basis for recovery does not turn on the finding of an enforceable agreement, there may be recovery under a contract implied in law even where the parties had no dealings at all with each other."). Even recognizing that an expectation of compensation can exist without a clear notion of who should pay it, requiring proof of such an expectation in every case would unduly restrict the expressed concept in Florida law which provides a mechanism for imposing liability in all types of cases

8

where "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiffs."

Nonetheless, although a claim for quantum meruit requires that plaintiffs demonstrate an expectation of compensation before they seek compensation, and a claim of unjust enrichment does not, that expectation might very well be relevant to the question of whether it would be unjust to retain a benefit without having to pay for it. Notwithstanding that claims for quantum meruit and unjust enrichment arise under distinct causes of action, they may at times share elements of proof such as an expectation of compensation.[5] In essence, this appears to be the import of the trial judge's ruling. (See Dist. Ct. Ord. at 13).

The trial judge viewed Tooltrend's advertising efforts as services provided to Utensili and adopted the rationale of Bloomgarden:

> By their very nature, the equitable principles of quasi-contracts are more difficult to apply where the court must determine whether services rendered by one person to another are to go unrewarded than where it must make that determination with respect to money or property unjustly

---

[5] Indeed, both causes of action can be pled alternatively. However, the expectation of compensation would be treated differently in each cause of action. In a claim for quantum meruit pursuant to a contract implied in fact, the expectation of compensation would be measured by the intent of the parties as expressed by their actions. In a claim for unjust enrichment, it would be one of the considerations in assessing the "unjustness" of the enrichment and measured in terms of the benefit to the owner, not the cost to the provider. See Levine v. Fieni McFarlane, Inc., 690 So.2d 712, 713-14 (Fla. Dist. Ct. App. 1997); see also Miceli v. Gilmac Developers, Inc., 467 So.2d 404, 406 (Fla. Dist. Ct. App. 1985); 17A Am. Jur.2d Contracts § 746 (1999) (noting that a plaintiff "may sue on a quasi contract to recover any money paid by him or on a quantum meruit to recover for what he has . . . furnished"). In this case, Tooltrend's only claim is for unjust enrichment.

9

retained.  But since there is no general responsibility in quasi-contract law to pay for services *irrespective* of the circumstances in which they are carried out, a number of factual criteria have been utilized by courts to ascertain whether in a given case the defendant has undeservedly profited by the plaintiff's efforts.  Thus, in situations involving personal services, it has been variously stated that a duty to pay will not be recognized where it is clear that the benefit was conferred gratuitously or officiously, or that the question of payment was left to the unfettered discretion of the recipient.  Nor is compensation mandated where the services were rendered simply in order to gain a business advantage. And the courts have reached the same conclusion where the plaintiff did not contemplate a personal fee, or the defendant could not reasonably have supposed that he did . . . .  No unfairness results from a denial of compensation to the claimant who had no expectation of personal remuneration at the time of performance.  On the contrary, it would be unjust to impose a liability for payment on the party who accepts the services without any warning, from the surrounding circumstances or otherwise, that they were rendered for a price.

479 F.2d at 211-12 & n.66 (footnotes omitted) (emphasis in original); see also Lirtzman v. Fuqua Indus., Inc., 677 F.2d 548, 553 (7th Cir. 1982); E. Allan Farnsworth, Contracts §2.20, at 106 (2d ed. 1990) ("recovery in restitution will be denied if [a benefit] was conferred 'gratuitously,' that is, without expectation of compensation").

We see these considerations as equally relevant under Florida law in assessing whether "the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  Greenfield, 705 So.2d at 931.  In this case, we are satisfied that the trial judge correctly assessed the evidence and determined that the circumstances did not create such inequity.  The trial

judge found that "the evidence in this case unquestionably shows that the sole reason Tooltrend engaged in advertising and promotional activities was to make a profit for itself. In this situation, it is not unjust, as a matter of law, if the defendants do not compensate Tooltrend for any enhancement that may have accrued to Utensili's two trademarks while Tooltrend was advertising and promoting the products it was selling . . . ." (Dist. Ct. Op. at 15). Tooltrend had already purchased the router bits from Utensili and was free to resell the router bits at a profit. It cannot be gainsaid that Tooltrend's promotional efforts were directed toward extending its own profit margin. Certainly, Tooltrend has reaped and continues to enjoy its own tangible and intangible benefits from the promotional work it has done. Although Tooltrend may have conferred the benefit of product recognition on Utensili, any incidental enrichment enjoyed by Utensili under the circumstances presented here is far from unjust. Although we do not hold that an expectation of compensation, per se, must be included as an element of every claim for unjust enrichment, we nevertheless conclude that, under these facts, the trial court did not err. Because "[t]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust," Commerce, 695 So.2d at 388 (quoting Maloney v. Therm Alum Indus. Corp., 636 So.2d 767, 770 (Fla. Dist. Ct. App.), rev. denied, 645 So.2d 456 (Fla.

11

1994)), and because we find no such injustice here, the district court was correct in entering a judgment as a matter of law in favor of Utensili.

AFFIRMED.