[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12109

_____

D. C. Docket No. 01-00248-CV-KAM

SHIP CONSTRUCTION AND FUNDING SERVICES (U.S.A.), INC.,
d.b.a. Colbert Group,
JACQ. PIEROT, JR. & SONS, INC.,

Plaintiffs-Appellants,

versus

STAR CRUISES, PLC,

Defendant-Appellee.

_____

No. 04-12970

_____

D. C. Docket No. 01-00248-CV-KAM

SHIP CONSTRUCTION AND FUNDING SERVICES (U.S.A.), INC.,
d.b.a. Colbert Group,

JACQ PIEROT, JR. & SONS, INC.,

                                                            Plaintiffs-Appellees,

                                    versus

STAR CRUISES PLC,

                                                            Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(May 31, 2005)

Before DUBINA, PRYOR and RONEY, Circuit Judges.

PER CURIAM:

Ship Construction and Funding Services, USA, Inc., and Jacq. Pierot Jr. & Sons, Inc. (Ship Construction) appeal the grant of summary judgment in favor of Star Cruises PLC. Ship Construction contends that genuine issues of material fact existed regarding whether Ship Construction was a procuring cause of the joint venture between Star and Carnival Cruise Lines and whether Star intended to pay for the services of Ship Construction. In a consolidated appeal, Star appeals the

2

denial of its motion for attorney's fees under Fla. Stat. section 57.105. Star contends that the district court abused its discretion when it refused to award attorney's fees to Star. We affirm both well-reasoned decisions of the district court.

## I. BACKGROUND

Ship Construction brought this action against Star and sought compensation for Ship Construction's alleged role in consummating a joint venture between Star and Carnival to acquire jointly Norwegian Cruise Lines (NCL). Ship Construction alleged that it conferred a benefit on Star by recommending the NCL joint venture and fostering an environment in which Star and Carnival were able to form that joint venture, which was ultimately abandoned. Ship Construction also alleged that the joint venture lowered the stock price of NCL by removing Carnival from the competition, and the lower stock price saved Star millions of dollars.

The district court granted summary judgment to Star and found that there "[was] not more than a scintilla of evidence that Plaintiffs' efforts brought Star and [Carnival] together for a joint venture worth over $1 billion." The district court denied Ship Construction's motion to reconsider and held that the question was whether Ship Construction conferred a benefit on Star, not simply whether Star realized a benefit. Star then moved for attorney's fees under Fla. Stat. section

3

57.105, but the district court denied that motion. Ship Construction appealed the summary judgment ruling of the district court, and Star appealed the denial of its motion for attorney's fees.

## II. STANDARD OF REVIEW

We review de novo a grant of summary judgment and view the evidence and all inferences in the light most favorable to the party opposing the motion. Shaw v. Conn. Gen. Life Ins. Co., 353 F.3d 1276, 1282 (11th Cir. 2003). We review for abuse of discretion the decision to award or deny attorney's fees under Florida law. McMahon v. Toto, 256 F.3d 1120, 1129 (11th Cir. 2001).

## III. DISCUSSION

Ship Construction argues that the district court failed to recognize that genuine issues of material fact existed regarding whether Star intended to pay for the services of Ship Construction and whether Ship Construction was a procuring cause of the joint venture between Star and Carnival to acquire jointly NCL. Star contends that the district court abused its discretion when it denied Star's motion for attorney's fees. We address each of these contentions in turn.

### A. Ship Construction Failed to Prove a Contract Implied-in-Fact with Star

Ship Construction alleged in its "quantum meruit" claim that a contract

4

implied-in-fact existed with Star. Under Florida law, a contract implied-in-fact "is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." Commerce P'ship v. Equity Contracting Co., Inc., 695 So. 2d 383, 385-86 (Fla. Dist. Ct. App. 1997) (en banc) (citations and quotation marks omitted). To prevail on a contract implied-in-fact theory, Ship Construction was required to present evidence that Star either requested brokerage services from Ship Construction regarding the joint venture or that Star knew that services were being rendered and both sides intended for compensation to be paid. See id.

Ship Construction failed to establish either that it rendered services or that Star requested or agreed to accept brokerage services pertaining to the NCL joint venture. Ship Construction asserts that Colin Au Fuk-yu (Au), a principal of Star, told the brokers that if they "were to present viable ideas for a business alliance with [Carnival], Star would have no problem paying for them." A careful review of the record shows that this statement referred only to the June 1998 agreement between Ship Construction and Star in which Ship Construction agreed to secure a charter for the Superstar Virgo, a cruise ship then being built for Star.

The 1998 agreement did not authorize or request Ship Construction to seek a business arrangement between Star and Carnival other than the sale or charter of

5

the Virgo or another Star vessel. Although Au stated that he would have no problem paying Ship Construction if it came up with "other similar ideas from Carnival," he also stated that "to expect a blanket agreement for anything between the two companies was beyond him . . . ." Au's statement establishes merely that Star was willing to pay for services rendered in connection with placing the Virgo or another vessel with Carnival, not that Star wanted Ship Construction to arrange a joint venture between itself and Carnival. Because a contract implied-in-fact is a legal contract based on an unspoken agreement, id. at 385, and Ship Construction presented no evidence from which a reasonable jury could find that an unspoken agreement existed between the parties to provide brokerage services for the NCL joint venture, the district court did not err when it granted summary judgment to Star on this count.

### B. Ship Construction Failed to Prove That it Conferred a Benefit on Star

Ship Construction asserted in its "unjust enrichment" claim that the joint venture to acquire NCL never would have happened without Ship Construction's assistance, and the joint venture enabled Star to "reap the benefit of a multi-million dollar acquisition cost savings." To prevail under a theory of unjust enrichment, or contract implied-in-law, Ship Construction had to prove that (1)

Ship Construction conferred a benefit on Star; (2) Star had knowledge of the benefit; (3) Star accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for Star to retain the benefit without paying fair value for it.  See id. at 386.  Although Florida law allows for a broker to recover under a theory of unjust enrichment if the broker was the procuring factor in a transaction, Media Servs. Group, Inc. v. Bay Cities Communications, Inc., 237 F.3d 1326, 1329 (11th Cir. 2001), Ship Construction failed to establish that it was the procuring cause of the NCL joint venture.

Ship Construction relies heavily upon a communication a few months before the joint venture.  In December 1999, Chris Ohlson of HSBC Shipbrokers, a non-party, sent a written message to Colin Au and stated that "Carnival would be interested in discussing with you an idea for both Star and [Carnival] to enter an agreement with NCL."  That message also included the phone number for Howard Frank, then-Chief Operating Officer of Carnival.  It is from those two facts that Ship Construction would have us infer that (1) Ship Construction actually recommended that Star and Carnival jointly acquire NCL, and (2) Ship Construction was the procuring cause of the NCL joint venture.

The inferences regarding that communication that Ship Construction would have us draw are unreasonable.  We are not convinced that the message from

7

Ohlson to Au recommended that Star and Carnival form a joint venture to acquire NCL. Ohlson stated that Carnival was interested in an unspecified agreement with NCL, but Ohlson did not mention a joint venture to acquire NCL. Even if Ship Construction suggested a joint venture, we conclude that a vague suggestion by an intermediary regarding a joint venture was insufficient as a matter of law to show that Ship Construction was the procuring cause of the joint venture. Cf. Earnest & Stewart, Inc. v. Codina, 732 So. 2d 364, 365-66 (Fla. Dist. Ct. App. 1999). Ship Construction cannot reasonably contend that Star, which is a sophisticated entity in the cruise ship industry, owes Ship Construction millions of dollars, under a theory of unjust enrichment, because HSBC, which allegedly was working with Ship Construction, communicated to Star one ambiguous statement about Carnival's interest in an agreement and provided Au with Frank's telephone number. Because Ship Construction failed to prove that it conferred a benefit on Star, the district court did not err when it granted summary judgment to Star on this count. Cf. Commerce P'ship, 695 So. 2d at 386.

### C. *The District Court Did Not Abuse its Discretion When it Denied Star's Motion for Attorney's Fees*

Star contends that the district court abused its discretion when it refused to award attorney's fees to Star. Florida law requires that a court "shall award a

8

reasonable attorney's fee to be paid to the prevailing party [in] a civil proceeding or action in which the court finds that [a claim presented by the losing party was] not supported by the material facts necessary to establish the claim . . . ." Fla. Stat § 57.105. Florida courts have interpreted this statute to require that a claim be frivolous before attorney's fees may be awarded. Wendy's of N.E. Fla., Inc. v. Vandergriff, 865 So. 2d 520, 523 (Fla. Dist. Ct. App. 2003).

Ship Construction's complaint failed, but it was not frivolous. After extensive discovery, Ship Construction presented some evidence that it worked on behalf of Star, although not enough evidence to prove the existence of a genuine issue of material fact. The district court did not abuse its discretion when it refused to award attorney's fees to Star.

## IV.  CONCLUSION

Ship Construction failed to show that Star agreed that Ship Construction would provide brokerage services for the joint venture with NCL, and Ship Construction failed to show that it was the procuring cause of the joint venture. The district court also did not abuse its discretion when it refused to award attorney's fees to Star. Both judgments of the district court are

**AFFIRMED.**