[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10899
_____

D.C. Docket No. 5:14-cv-00322-RH-GRJ

MARTIN ENERGY SERVICES, LLC,

Plaintiff–Counter Defendant-
Appellee Cross-Appellant,

versus

M/V BRAVANTE IX,
Its engines, machinery, tackle, appurtenances, apparel, etc., *et al.*,

Defendants,

BOLDINI LTD, *et al.*,

Defendants–Cross-Claimants–
Counter Claimants–Counter
Defendants,

OW BUNKER MIDDLE EAST DMCC,

Cross-Defendant,

ING BANK N.V.,

Cross Defendant–Counter
Claimant–Appellant Cross
Appellee.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(May 10, 2018)

Before WILSON and JORDAN, Circuit Judges, and CONWAY,* District Judge.

PER CURIAM:

ING Bank appeals the district court's final judgment following a bench trial awarding interpleaded funds to Martin Energy Services ("Martin") for fuel delivered to a maritime vessel. ING Bank asserts the district court erred by awarding Martin the fair value of the fuel provided. After review, we affirm.

I.

Boldini Ltd., a Brazilian company, arranged to have fuel provided to its ship, the M/V Bravante VIII, in Panama City, Florida, by contacting O.W. Bunker & Trading do Brasil, who in turn contacted two affiliated O.W. Bunker entities. The transaction was structured as a sale of fuel by Martin—not directly to Boldini—but to O.W. Bunker USA Inc., who sold the fuel to another O.W. Bunker affiliate, who in turn contracted to sell the fuel to Boldini.

Martin coordinated its delivery of the fuel with Boldini's local agent, the Bravante VIII's captain, and the ship's engineer who signed the bunkering

---

*Honorable Anne C. Conway, United States District Judge for the Middle District of Florida, sitting by designation.

certificate acknowledging delivery. Martin delivered the fuel on credit, and was not paid at the time of delivery. Unfortunately, the O.W. Bunker entities worldwide filed for bankruptcy in their respective countries of origin shortly after the fuel was delivered, and Martin remained unpaid for the fuel provided to the Bravante VIII, which had left the territorial waters of the United States.

Martin subsequently filed an admiralty action asserting *in personam* claims against Boldini for breach of contract and quantum meruit arising out of the fuel provided to the Bravante VIII. Martin also asserted a *quasi in rem* claim against a different Boldini-owned vessel within the court's jurisdiction, the Bravante IX, which Martin sought to attach pursuant to Rule B of the Supplemental Rules for Admiralty and Maritime Claims governing *in personam* actions.

Eight days later, Boldini filed an answer before the Bravante IX was attached, and asserted a counterclaim and cross-claim for interpleader, 28 U.S.C. § 1335, against all of the parties with competing claims to the payment sought by Martin for the fuel provided to the Bravante VIII. Boldini included as a cross-defendant ING Bank, a secured lender of certain O.W. Bunker entities. Boldini eventually deposited the appropriate funds owed for the fuel into the registry of the district court and was discharged from further liability.

Following a two-day bench trial, the district court determined that Martin had a valid quantum-meruit claim against Boldini that was satisfied by Boldini's

tender into the court's registry of the full amount due.[1] The court awarded Martin the fair value of the fuel ($286,200) for providing and delivering the fuel, and awarded ING Bank the amount the relevant O.W. Bunker entities would have received as "resellers" or "traders" of the fuel ($3,900), plus a proportional share of interest on the principal deposited. ING Bank appealed the district court's determination that Martin had valid contract and quantum-meruit claims as well as the award of the interpleaded funds. After review and oral argument, we affirm.

II.

"We review a district court's factual findings when sitting without a jury in admiralty under the clearly erroneous standard. We review the district court's conclusions of law de novo." *Sea Byte, Inc. v. Hudson Marine Management Services, Inc.*, 565 F.3d 1293, 1298 (11th Cir. 2009) (citation omitted). "A finding of fact is clearly erroneous when the entirety of the evidence leads the reviewing court to a definite and firm conviction that a mistake has been committed." *Id.*

---

[1] Although the district court also found "Martin had a valid maritime lien against the Bravante VIII," Martin's Complaint was not filed as an *in rem* action, Martin did not seek a Rule C arrest of the ship it had fueled, the Bravante VIII, because that ship had left the jurisdiction of the court, and no party asserted a maritime lien. *Cf. Barcliff, LLC v. M/V Deep Blue*, 876 F.3d 1063 (11th 2017) (resolving competing maritime lien claims under the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31342, in an *in rem* suit brought under Supplemental Rule C against the vessel which had been supplied with fuel). At oral argument the parties agreed that a maritime lien "is not an issue" in the case. In addition, the district court acknowledged at the summary judgment hearing that the claim at issue was *in personam* and not a Rule C *in rem* action to enforce a maritime lien against the vessel supplied with fuel, the Bravante VIII. *See, e.g., Dresdner Bank Ag v. M/V Olympia Voyager*, 463 F.3d 1233, 1238 (11th Cir. 2006) ("A Supplemental Rule B action is an *in personam* action that would give rise to, at most, an *in personam* lien claim–not a maritime lien.").

(quoting *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1380 (11th Cir. 2006)). "We will not disturb the district court's choice of an equitable remedy except for abuse of discretion." *Commodity Futures Trading Comm'n v. Levy*, 541 F.3d 1102, 1110 (11th Cir. 2008). We "may affirm a decision of the district court on any ground supported by the record." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1236 n.1 (11th Cir. 2013) (citation omitted).

Where a case arises in admiralty, we apply the general maritime law, which is federal law. *Sea Byte*, 565 F.3d at 1298 (citing *Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co., Inc.*, 207 F.3d 1247, 1250-51 (11th Cir. 2000)). However, "when neither statutory nor judicially created maritime principles provide an answer to a specific legal question, courts may apply state law provided that the application of state law does not frustrate national interests in having uniformity in admiralty law." *Id.* (applying Florida law of quantum meruit in an admiralty case).

Because ING Bank had argued that the bunkering certificate did not give rise to a contract between Boldini and Martin,[2] the district court found in the alternative that Martin was entitled to payment for the fuel on the basis of quantum meruit. Under Florida law, to prevail on a quantum-meruit claim, a plaintiff must show that (1) it conferred a benefit on the defendant; (2) the defendant had

---

[2] Because it is unnecessary to the resolution of this appeal, our decision does not address the district court's decision concerning Martin's breach of contract claim. *See Merle Wood & Assocs.,* 714 F.3d at 1236 n.1 (We "may affirm a decision of the district court on any ground supported by the record.").

knowledge of the benefit; (3) the defendant accepted or retained the benefit; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying its fair value. *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (en banc); *Merle Wood & Assocs.,* 714 F.3d at 1237 (reciting elements of quantum meruit under Florida law).

The district court found Martin had conferred a benefit on Boldini by providing 300 metric tons of fuel to Boldini's vessel, the Bravante VIII, which Boldini knew of, accepted, retained, and memorialized in a bunkering certificate acknowledging the fuel's delivery. The district court determined it would be inequitable for Boldini to retain the benefit of the fuel without paying for it and awarded Martin the fair value of the fuel.

The district court relied on two Florida cases allowing a subcontractor to recover in quantum meruit against the owner where the general contractor had declared bankruptcy or gone out of business before the owner paid for the subcontracted work. *See Commerce P'ship*, 695 So. 2d at 387-88; and *GFR Leasing Corp. v. Transportation Equipment Specialists, Inc.*, 737 So. 2d 628, 629 (Fla. 1st DCA 1999). Under Florida law, a subcontractor can recover in quantum meruit from the owner, even though the subcontractor had a contract with the general contractor, if the owner had received a benefit from the subcontractor's

work and the owner had not paid for that work under the owner's own contract with the general. *Commerce*, 695 So. 2d at 387-88; *GFR Leasing*, 737 So. 2d at 629. Applying Florida law, in the absence of a valid contract claim against Boldini, and with the relevant O.W. Bunker entity in bankruptcy and unpaid, Martin can recover in quantum meruit from Boldini for the benefit of the fuel Martin delivered and provided to Boldini. Accordingly, the district court did not err by entering judgment which awarded Martin the value of the fuel provided from the fund in the registry of the court, and awarding ING Bank the remaining portion earned by the "resellers."[3]

   **AFFIRMED.**

---

[3] To the extent Martin's cross-appeal challenges the district court's award to ING Bank, we find no error in the court's finding that O.W. Bunker Brazil functioned as the broker for O.W. Bunker Middle East, who contracted to sell the fuel to Boldini. The motion filed by ING Bank to strike portions of the reply brief filed by Martin in the cross-appeal is denied as moot.