**George and Eileen KIRCHNER, et al., Plaintiffs,**

**v.**

**OCWEN LOAN SERVICING, LLC, et al., Defendants.**

**Case No. 1:16–cv–23950–UU**

United States District Court, S.D. Florida.

Entered 06/28/2017

Signed 06/27/2017

Alissa Del Riego, John Gravante, III, Peter Prieto, Podhurst Orseck P.A., Miami, FL, Daniel Alberstone, Pro Hac Vice, Mark Pifko, Pro Hac Vice, Roland Tellis, Pro Hac Vice, Baron & Budd, P.C., Encino, CA, John T. Spragens, Pro Hac Vice, Lieff Cabraser Heimann & Bernstein, LLP, Nashville, TN, Rachel Geman, Pro Hac Vice, Lieff Cabraser Heimann & Bernstein, LLP, New York, NY, for Plaintiffs.

Robert Stephen Galbo, Greenberg Traurig, P.A., David A. Coulson, Hilarie Bass, Lacey Diggs Hofmeyer, Miami, FL, for Defendants.

## ORDER

Ursula Ungaro, UNITED STATES DISTRICT JUDGE

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss First Amended Class Action Complaint. D.E. 58.

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises.

In this case, Plaintiffs' claims arise from Defendants' automatic and indiscriminate ordering of property inspections and imposition of the resultant fees and costs against the accounts of delinquent mortgage borrowers. Plaintiffs insist that Defendants' assessment of these fees for property inspections amounts to a fraudulent scheme because Defendants misrepresent their authority to impose and assess property inspections and the costs of such inspections against borrowers' accounts after a default.

Despite two attempts at pleading, the Court finds that Plaintiffs are simply unable to plead around the express terms of the mortgage agreements at issue, which explicitly allow for Defendants to "charge fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property ... including, but not limited to ... property inspection and valuation fees." D.E. 58–2 ¶ 14; D.E. 58–3 ¶ 14. Plaintiffs have been unsuccessful in demonstrating that Defendants' conduct, as alleged, violates the terms of the mortgage agreements, let alone, rises to the level of fraud. Because the Court finds Plaintiffs are simply unable to plead fraud under the facts of this case, Plaintiffs' fraud based claims—Counts 1–2, 4–6, and 8—are dismissed with prejudice. Plaintiffs' remaining claims—unjust enrichment and a claim for a violation of the Pennsylvania Loan Interest Protection Act ("PLIPA")—also fail to state a claim for the reasons addressed herein and are dismissed with prejudice.

## FACTUAL ALLEGATIONS

The following facts are taken from Plaintiffs' First Amended Class Action Complaint. D.E. 53.

### 1. The Parties

Plaintiffs, George and Eileen Kirchner (collectively, the "Kirchners"), are residents of New York. D.E. 53 ¶ 14. Plaintiff, Blossom Jones ("Jones"), is a resident of

Pennsylvania. *Id.* Defendant, Ocwen Financial Corporation ("Ocwen Financial"), is a Florida corporation with its principal place of business in Atlanta, Georgia. *Id.* Defendant, Ocwen Loan Servicing, LLC ("Ocwen Loan Servicing"), is a Delaware limited liability company, and an indirect wholly-owned subsidiary of Ocwen Financial (*id.*) that is licensed to service mortgage loans and maintains operations concerning the management of loans that are in default (*id.* ¶ 22). Ocwen Loan Servicing is one of the largest non-bank mortgage servicers in the United States. *Id.* ¶ 26.

## 2. Defendants' Business

Defendants, Ocwen Financial and Ocwen Loan Servicing (collectively, "Defendants"), derive revenue from servicing mortgages owned by hedge funds and investment houses. *Id.* ¶ 26. Defendants focus on servicing non-prime loans obtained by credit-impaired borrowers. *Id.* ¶ 30. In that capacity, Defendants acts as a third-party collection agency for banks and other entities that own mortgage portfolios, collects payments from mortgage borrowers, and handles other billing services. *Id.* Defendants are paid a fee for its loan administration services. *Id.* ¶ 27. It derives a significant portion of its revenues from fees charged to delinquent borrowers. *Id.* ¶ 31. Defendants utilize computer software programs to administer the loans that it services. *Id.* ¶ 51. The software programs are designed to manage borrowers' accounts and assess fees according to protocols and policies designed by Defendants' executives. *Id.*

## 3. Defendants' Alleged Wrongdoing

Plaintiffs allege that Defendants employed a fraudulent scheme using false pretenses to charge delinquent borrowers unauthorized property inspection fees. As described by Plaintiffs, this scheme is implemented by Defendants' use of information management systems that are programmed to indiscriminately charge fees and costs to borrowers' accounts for property inspections at regular intervals, contrary to investor guidelines and provisions of Fannie Mae mortgage contracts. *Id.* ¶ 66. The Fannie Mae uniform mortgage contracts executed by the borrowers and investor guidelines allow Defendants to charge borrowers for these property inspections, but they also provide that an inspection may be charged to borrowers only if it is reasonable or appropriate to protect the lender's interest in the property. *Id.* ¶ 67. Additionally, the lenders/investors provide Defendants with specific instructions as to the circumstances that reasonably and appropriately justify property inspections. *Id.* In this case, Defendants allegedly disregarded those express instructions. *Id.* ¶ 44. According to Plaintiffs, this conduct amounts to fraud because Plaintiffs are "informed and believe" that Defendants misrepresent the basis for which it is authorized to charge a borrower for property inspections, and Defendants allegedly concealed the scheme by misrepresenting that charges for property inspection fees are appropriate when a buyer is in default. *Id.* ¶¶ 72, 75.

Defendants allegedly ignored the limitations on its authority and under false pretenses, demanded that borrowers compensate it for unauthorized property inspections. *Id.* ¶ 49. Plaintiffs allege that as a result, borrowers with first and second mortgages have been assessed charges for property inspections on each mortgage during the same month. *Id.* ¶ 78. Defendants also do not have a policy and/or procedure of reviewing the results of property inspection reports from third-party vendors for purposes of determining whether further property inspections are warranted. *Id.* ¶ 79.

The indiscriminate assessment of unauthorized property inspection fees can make

it impossible for borrowers to become current on their loans. *Id.* ¶ 82. When borrowers are behind on their mortgages and charges for their property inspections are stacked on to the past-due principal and interest payments, borrowers have difficulty bringing their loans current. *Id.* ¶ 83. As a result of Defendants' practices, borrowers suffer damage to their credit scores. *Id.* ¶ 85. Also, by keeping borrowers in default with these practices, Defendants affect whether borrowers can get a loan in the future and what the borrowers' interest rates will be on such loans. *Id.* Moreover, as a result of Defendants' practices, borrowers are driven into foreclosure. *Id.* ¶ 86.

#### 4. Plaintiffs' Mortgage Agreements

In their Amended Complaint, Plaintiffs allege that each has a residential mortgage that is serviced by Defendants. *Id.* ¶¶ 88, 102. In their Motion to Dismiss, Defendants attach a copy of the Kirchners' mortgage agreement and a copy of Jones' mortgage agreement. D.E. 58–2; D.E. 58–3.[1] While Plaintiffs do not explicitly allege that the mortgages are Federal National Mortgage Association ("Fannie Mae") mortgages,[2] it is clear from the exhibits attached to Defendants' Motion to Dismiss that the Kirchners' mortgage agreement is a New York Single Family Fannie Mae/Freddie Mac Uniform Instrument and Jones' mortgage agreement is a Pennsylvania Single Family Fannie Mae/Freddie Mac Uniform Instrument. *Id.*

According to Plaintiffs, Fannie Mae uniform mortgage contracts consist of the

following two documents: the mortgage or deed of trust ("Security Instrument") and the promissory note ("Note"). *Id.* ¶ 68. They contain certain provisions describing what may happen if borrowers default on their loans. *Id.*

The relevant portions of Plaintiffs' mortgages that are at issue in this case are Covenants 9 and 14 of the Security Instruments. Covenant 9 of Plaintiffs' Fannie Mae Security Instruments discloses to the borrowers that, in the event of default, the lender may:

[D]o and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument. Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property, (b) securing and/or repairing the Property ... I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate sent forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

D.E. 53 ¶ 69; D.E. 58–2 ¶ 9; D.E. 58–3 ¶ 9. Covenant 14 of Plaintiffs' Fannie Mae Instruments states as follows: "Lender may charge me fees for services performed in connection with my default, for the pur-

---

1. As this Court stated in her prior Order, a court may consider a written agreement upon which Plaintiffs' claims are based if it is referenced in the Complaint, even though Plaintiffs failed to attach it. *See Infante v. Bank of Amer. Corp.*, 468 Fed.Appx. 918, 921 n.2 (11th Cir. 2012).

2. In their Amended Complaint, Plaintiffs make a number of references to Fannie Mae policies, instruments, and guidelines. However, the Court notes that Plaintiffs have failed to allege that each class member has a mortgage that has been issued by Fannie Mae. In defining the class, Plaintiffs only allege that each class member has a mortgage that is serviced by Defendants.

pose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees." D.E. 58–2 ¶ 14; D.E. 58–3 ¶ 14.

Paragraph 7(E) of the Fannie Mae Note [3] discloses that the note holder:

Will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

*Id.* ¶ 71. Plaintiffs allege that the Fannie Mae uniform mortgage contracts requires borrowers to pay for default-related services only when reasonable or appropriate to protect the note holder's interest in the property and rights under the Fannie Mae Security Instrument. *Id.*

### 5. Plaintiffs, The Kirchners

Plaintiffs, the Kirchners, are residents of New York and have a residential mortgage that is serviced by Defendants. *Id.* ¶¶ 87–88. Defendants assessed fees and costs for property inspections, which were neither reasonable nor appropriate, on the Kirchners' mortgage account, which subjected the Kirchners to an invalid debt. *Id.* ¶ 89.

From March 28, 2014 through January 26, 2016, Defendants assessed fees and costs to the Kirchners' account for numerous property inspections, despite the fact that the Kirchners maintained regular contact with Defendants and occupied the property during that entire time period.

*Id.* ¶ 90. Each of the property inspection charges were assessed to the Kirchners under the false pretense that Defendants, as the loan servicer, had the authority to demand payment under the particular circumstances of the Kirchners' loan. *Id.* The Kirchners allege that Defendants did not have the authority to assess these charges, and the Kirchners had no way of knowing that Defendants lacked such authority or exceeded it. *Id.*

An Ocwen Payment History document, dated May 18, 2016, and issued to the Kirchners by Defendants reveals that Defendants assessed the Kirchners' account property inspection fees for the following dates: May 27, 2015, June 29, 2015, July 29, 2015 (two assessed on this date), October 20, 2015, December 10, 2015, December 22, 2015, and January 26, 2016. *Id.* ¶ 91. For each inspection, Defendants charged fees that amounted to $10.50, with the exception of January 26, 2016, for which they were charged $13.25. *Id.* The same document reveals that on July 29, 2015, Defendants actually assessed two property inspection fees and costs totaling $21.00 on the mortgage account of the Kirchners on the same day. *Id.* ¶ 92.[4] According to the Kirchners, Defendants' failure to disclose the limited circumstances under which it was authorized to charge property inspection fees to the Kirchners created the impression that Defendants had the authority to demand payment from the Kirchners when, in fact, it did not. *Id.* ¶ 93.

---

**3.** While Defendants attached the mortgages to their Motion to Dismiss, neither party attached the Notes for the Court's consideration. The only allegations pertaining to the Notes are those contained within Plaintiffs' Amended Complaint.

**4.** Plaintiffs also allege that only two days prior, Defendants had assessed Kirchners' account with a property valuation expense of $85.00. *Id.* ¶ 92. However, Plaintiffs do not seem to be alleging fraudulent abuse of Defendants' authority to order Plaintiffs' "property valuations." Therefore, Plaintiffs' allegations regarding "property valuations" appear to be immaterial.

Defendants did not take any steps to confirm whether the Kirchners were occupying the property before ordering property inspections and, in fact, the Kirchners spoke with an Defendants "relationship manager" named Lubna via telephone on a regular basis throughout the relevant time period, informing her that the Kirchners were living in the house, and Defendants had no need to inspect it. *Id.* ¶ 98. During that time period, the Kirchners also received and responded to mail from Defendants at this address, so based on its regular communications with the Kirchners, Defendants had no reason to believe that the house was unoccupied or in disrepair. *Id.* The Kirchners made payments to Defendants that were at least partially applied to the property inspection fees. *Id.* ¶ 99.

## 6. **Plaintiff, Jones**

Plaintiff, Blossom Jones ("Jones"), is a resident of Whitehall, Pennsylvania, who has a residential mortgage that is serviced by Defendants. *Id.* ¶¶ 101–102. Jones claims that Defendants assessed fees and costs, which were neither reasonable nor appropriate, for property inspections on Jones' mortgage account, which subjected Jones to an invalid debt. *Id.* ¶ 105.

From October 11, 2010 through December 31, 2015, Defendants assessed fees and costs to Jones' account for at least 21 property inspections, despite the fact that Jones maintained regular contact with Defendants and occupied the property during that entire time period. *Id.* ¶ 106. Each of the property inspection charges allegedly were assessed to Jones under the false pretense that Defendants, as the loan servicer, had the authority to demand payment under the particular circumstances of Jones' loan. *Id.* Jones asserts that Defendants did not have the authority to assess these charges, and Jones had no way of knowing that Defendants lacked such authority or otherwise exceeded it. *Id.*

An Ocwen Payment History document, dated February 10, 2016, and issued to Jones by Defendants reveals that Defendants assessed Jones' account property inspection fees on the following dates: October 11 and December 13, 2010; March 10, and September 8, 2011; January 15, December 4, December 24, 2013; January 28, February 13, May 13, and June 18, 2014; January 27, March 13, May 1 (4 assessed on this day), September 23, October 27, November 30, and December 31, 2015. *Id.* ¶ 111. The fees were $10.50, $13.25, or $15.00. *Id.* ¶ 112. The same document reveals that on May 1, 2015, Defendants actually assessed four property inspection fees and costs on the mortgage account of Jones on the same day. *Id.* ¶ 113.[5]

Defendants did not take any steps to confirm whether Jones was occupying the property before ordering property inspections, and in fact, Jones spoke with Defendants' "relationship manager" by telephone on a regular basis during the relevant time period. *Id.* ¶ 116. In those calls, Jones informed the Defendants representative that she was living in the house and maintaining it by replacing the roof, a wall, the water heater, and performing other repairs. *Id.* During this same time period, Jones corresponded with Defendants in writing at this address; and based on its regular communications with Jones, Defendants had no

---

**5.** Plaintiffs also allege that throughout this time period, Defendants also assessed Jones on multiple occasions for property valuation expenses of at least $100.00 on Jones' account. *Id.* However, similar to the allegations

within the section pertaining to the Kirchners, Plaintiffs do not allege that a property valuation expense is the same as a "property inspection" expense and this allegation, therefore, appears to be immaterial.

reason to believe the house was unoccupied or in disrepair. *Id.*

## PROCEDURAL HISTORY

Plaintiffs filed this Class Action Complaint against Defendants, asserting the following claims: (1) Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); (2) Violation of RICO, 18 U.S.C. § 1962(d); (3) Violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; (4) Common Law Fraud/ Fraud by Omission/Fraudulent Concealment; (5) Violation of New York Deceptive Acts and Practices Act ("NYGBL"), N.Y. Gen. Bus. Law § 349; (6) Violation of Pennsylvania Loan Interest Protection Act ("PLIPA"), 41 Pa. Stat. Ann § 502; (7) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Act ("UTPCPL"), 73 P.S. § 201–1 *et seq.* D.E. 1. In response, Defendants filed their Motion to Dismiss and requested that this Court dismiss each of the claims contained within Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). D.E. 17.

On March 15, 2017, this Court issued her Order granting Defendants' Motion to Dismiss without prejudice and provided Plaintiffs with leave to amend. D.E. 48. In her Order, the Court found Plaintiffs failed to state plausible RICO claims, failed to state a plausible claim for a violation of the FDCPA, failed to allege fraud-based claims in Counts 1–5 and 7, and failed to demonstrate that Plaintiffs had standing to enforce any administrative guidelines. The Court further concluded that Plaintiffs' Complaint operated as a shotgun pleading by incorporating all of the general factual allegations by reference and by failing to delineate which allegations pertained to each particular Defendant.

On April 7, 2017, Plaintiffs filed their First Amended Complaint. D.E. 53. In their Amended Complaint, Plaintiffs alleged the following claims: (1) Violation of RICO, 18 U.S.C. § 1962(c); (2) Violation of RICO, 18 U.S.C. § 1962(d); (3) Unjust Enrichment; (4) Violation of FDCPA, 15 U.S.C. §§ 1692, *et seq.* on behalf of Jones; (5) Common Law Fraud; (6) Violation of NYGBL, N.Y. Gen. Bus. Law § 349, on behalf of the Kirchners; (7) Violation of PLIPA, 41 Pa. Stat. Ann § 502 on behalf of Jones; and (8) Violation of UTPCPL, 73 P.S. § 201–1 *et seq. Id.* Defendants then moved to dismiss Plaintiffs' Amended Complaint, which is the subject of this Order. D.E. 58.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

In considering a motion to dismiss for failure to state a cause of action, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 708 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955)). Although "[a] plaintiff need not plead 'detailed factual allegations[,] ... a formulaic recitation of the elements of a cause of action will not do,'" and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.'" *Simpson*, 744 F.3d at 708 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)).

## ANALYSIS

In their Motion to Dismiss Plaintiffs' First Amended Complaint, Defendants argue that Plaintiffs cannot maintain their claims that are based on fraudulent or deceptive conduct because the property inspections and associated fees were expressly authorized by the terms of the mortgages. Defendants argue that the allegations contained within the fraud-based claims amount to a breach of contract claim, at most, and do not rise to the level necessary to establish any claim sounding in fraud. Defendants also argue that each of Plaintiffs' eight claims fail pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

The Court will first focus its analysis on the deficiencies associated with Plaintiffs' six fraud-based claims.[6] Because the Court finds Plaintiffs' fraud-based claims fail, the Court will not separately address each of these six claims. The Court will then consider whether Plaintiffs have sufficiently pleaded the remaining two claims—a claim for unjust enrichment and a claim for a violation of the Pennsylvania Loan Interest Protection Act.

**I. COUNTS 1–2, 4–6, AND 8: PLAINTIFFS' FRAUD–BASED CLAIMS**

Defendants argue that the allegations comprising Plaintiffs' fraud-based claims do not rise to the level of fraud because the loan documents expressly authorize property inspections once a default occurs. Defendants insist that they are permitted to charge fees in connection with certain actions, which includes the ordering of property inspections in their discretion, to protect the lender's interest in the property pursuant to the terms of the mortgage agreements. Therefore, Defendants' conduct conformed to the terms of Plaintiffs' mortgage agreements to protect the lender's interest in the property.

In response, Plaintiffs argue that they have sufficiently alleged their fraud-based claims because the First Amended Complaint contains numerous allegations that Defendants misrepresented their authority to borrowers. Plaintiffs insist that there are sufficient factual allegations detailing how Defendants, in their communications to borrowers and in an attempt to lull borrowers into a sense of trust, misrepresented when a property inspection would occur, and the limited conditions under which they were authorized to charge for an inspection. D.E. 53 ¶¶ 89–100, 106–117. Plaintiffs argue that Defendants misrepresented to borrowers that a property inspection fee "may be charged for an inspection to the property to make sure that it is still in good condition" merely if a borrower is delinquent on the loan. Plaintiffs insist that this statement constitutes a misrepresentation because these statements are inconsistent with Uniform Covenant 9 of the Fannie Mae Security Instrument and the Fannie Mae Guidelines,

---

**6.** For purposes of this Motion, when addressing Plaintiffs "fraud-based claims," the Court is addressing Plaintiffs' RICO claims (Count 1 and 2), the FDCPA claim (Count 4), the common law fraud claim (Count 5), the NYGBL claim (Count 6), and the UPCPL claim (Count 8).

which "make it clear that a servicer may not charge a borrower for a property inspection based on delinquency without more." Plaintiffs argue that even if Defendants' conduct also gives rise to a breach of contract claim, it does not preclude Plaintiffs from bringing fraud-based claims where the fraudulent scheme is Defendants' misrepresentation that they have the legal right to indiscriminately charge for property inspection fees.

In their Reply, Defendants argue that their conduct is consistent with the express terms of the mortgages, and nothing argued by Plaintiffs changes this outcome. Defendants point to the terms of the mortgage agreements to justify their position. Specifically, Defendants contend that paragraph 14 of Plaintiffs' mortgage agreements authorizes the lender to charge "fees for services performed in connection with Borrower's default ... including, but not limited to ... property inspections and valuation fees." D.E. 58–2 ¶ 14; D.E. 58–3 ¶ 14. In addition, Defendants point to paragraph 9 of each of the mortgage agreements, where the lender is permitted to "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the property" and the borrower "will pay to Lender any amounts, with interest, which Lender spends under this Section 9." D.E. 58–2 ¶ 9; D.E. 58–3 ¶ 9. According to Defendants, Plaintiffs have not and cannot explain how exercising their discretion to ensure that a property is in good condition is inconsistent with the language in paragraph 14, which authorizes Defendants to perform property inspections in the event of default, and paragraph 9, which authorizes Defendants to "do and pay for whatever is reasonable and appropriate to protect the Lender's interest in the property."

In her prior Order, the Court considered the same arguments that are being raised by Defendants in moving to dismiss Plaintiffs' Amended Complaint. D.E. 48. The Court also expressed skepticism in her Order that Plaintiffs would be able to state fraud-based claims under the facts of this case. Further, this Court acknowledged that the deficiencies in Plaintiffs' initial Complaint were similar to those considered by the district court in *Vega v. Ocwen Financial Corporation*, No. 2:14-cv-04408-ODW, 2015 WL 1383241, at *4 (C.D. Cal. Mar. 24, 2015), where the court dismissed the plaintiffs' complaint with prejudice because the mortgage agreements at issue explicitly authorized property inspections while the borrowers were in default. The district court in *Vega* concluded that the factual allegations amounted to a breach of contract claim, at most, and the plaintiffs would be unable to bring a fraud claim in such a scenario. *Id.* In citing to *Vega*, this Court cautioned Plaintiffs that they also may be unable to avoid the clear terms of their mortgage agreements, similar to the plaintiffs in *Vega*. Nevertheless, the Court provided Plaintiffs with leave to amend in order to allege additional facts that may potentially rise to the level of fraud.

In their Opposition, Plaintiffs' arguments now are essentially two-fold: (1) in their Amended Complaint, Plaintiffs add numerous factual allegations detailing how Defendants, in their communications to borrowers, and in order to lull borrowers into a sense of trust, misrepresented the definition of property inspections and the limited conditions under which they were authorized to charge for such; and (2) Defendants' reliance on the district court's holding in *Vega* is misplaced. The Court rejects both of these arguments.

First, Plaintiffs point to Defendants' alleged communications in paragraphs 2 and 72–76 in their Amended Complaint as the basis for Plaintiffs' fraud-based claims. While Plaintiffs characterize these communications as misrepresentations and re-for-

mulate the communications in various ways, they all amount to one allegation: that Defendants misrepresented that they had the authority to obtain and charge for property inspections once a loan was delinquent regardless of whether the inspection was necessary to protect the lender's property interest. Plaintiffs insist that the mere fact that a borrower is delinquent on his/her loan is not sufficient justification for a servicer to charge a borrower for a property inspection fee. While that may be true, that does not equate to fraud; Plaintiffs must still identify an active misrepresentation or omission of a material fact on which reliance can be placed to state a plausible fraud-based claim.

Moreover, contrary to Plaintiffs' arguments, Defendants disclosed in Plaintiffs' mortgage agreements that they had the authority to order property inspections, the cost of which would be charged to borrowers' mortgage accounts, in the event of a default. Paragraph 14 of each of Plaintiffs' mortgage agreements specifically authorizes the lender to charge "fees for services performed in connection with Borrower's default ... including, but not limited to, property inspection and valuation fees." D.E. 58–2 ¶ 14; D.E. 58–3 ¶ 14. Paragraph 9 of each of Plaintiffs' mortgage agreements permits the lender to "do and pay for whatever is reasonable or appropriate to protect the Lender's interest in the property" and the borrower "will pay to Lender any amounts, with interest, which Lender spends under this Section 9." D.E. 58–2 ¶ 9; D.E. 58–3 ¶ 9. Thus, there is no question that when a borrower defaults under the terms of the loan, Defendants have discretion to order property inspections and recover the amount of the property inspection fees from their borrowers in Defendants' discretion. And, even if Defendants abuse their discretion, that does not equate to fraud in the absence of an identifiable misrepresentation or omission.

Plaintiffs' argument that Defendants misrepresented that delinquency alone does not permit Defendants to charge for property inspections before undertaking a reasonable and appropriate determination also falls flat. As the district court in *Vega* addressed in its ruling, the mortgage documents do not require a reasonableness determination before Defendants can assess property inspection fees because "[t]he mortgage would not list property inspection fees as an authorized charge if property inspections were not reasonable and appropriate acts under the agreement." 2015 WL 1383241, at *4. Regardless, this Court believes Plaintiffs' focus on the "reasonable and appropriate determination" is a distraction. Even if this Court were to find that Defendants' assessment of the property inspection fees were neither reasonable nor appropriate—an inquiry that would be best suited for resolution at the summary judgment stage—this determination, alone, would not amount to fraud.

Plaintiffs' continued attempt to distinguish the facts of *Vega* from the facts of this case also fails. The Court is mindful of the Order issued by the Ninth Circuit Court of Appeals in the *Vega* case affirming the district court's dismissal, where the Ninth Circuit states, "[w]e do not agree with the district court's conclusion that the plaintiffs could <u>only</u> bring a breach of contract claim." *Vega v. Ocwen Fin. Corp.*, 676 Fed.Appx. 647, 648, (9th Cir. 2017). However, the Court does not find that this conclusion alters this Court's ruling. In its opinion, the Ninth Circuit ultimately affirms the district court on the grounds that the plaintiffs' failed to plead a fraudulent scheme, as required by Federal Rule of Civil Procedure 9(b). Similarly, in this case, the Court agrees that under a different set of circumstances, Plaintiffs may be able to plead both a breach of contract claim and fraud-based claims; however, where Defendants' conduct is expressly

authorized by the language of the agreements, the Court simply cannot find that Plaintiffs have pleaded a fraudulent scheme.

Plaintiffs also argue that the Ninth Circuit expressly acknowledged that in a scenario where property inspections were assessed, but the inspections did not take place, fraud may be present. 676 Fed. Appx. at 648. However, Plaintiffs do not claim in their Amended Complaint pertaining to the Plaintiffs in this case that they were charged for inspections that did not occur. Thus, the Court does not find that the exception recognized for by the Ninth Circuit applies under the facts of this case.

After providing Plaintiffs with detailed guidance in her prior Order, the Court does not find it necessary to provide Plaintiffs with additional leave to amend their Complaint because the Court does not believe any fraud-based claim arises from the facts of this case. The Eleventh Circuit Court of Appeals has stated, "[w]e have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so." *Eiber Radiology, Inc. v. Toshiba America Med. Sys., Inc.*, 673 Fed.Appx. 925, 930 (11th Cir. 2016). Accordingly, Counts 1–2, 4–6, and 8 are dismissed with prejudice.

## II. COUNT 3: UNJUST ENRICHMENT CLAIM

■ In their Motion to Dismiss, Defendants move to dismiss Plaintiffs' unjust enrichment claim on the grounds that throughout their Amended Complaint, Plaintiffs allege the existence of an express contract, that is, their residential mortgages. Because Plaintiffs' claims arise out of Defendants' rights under Plaintiffs' mortgage agreements, Defendants argue Plaintiffs' unjust enrichment claim must fail. In addition, Defendants also argue that to the extent Plaintiffs are attempting to plead in the alternative, Plaintiffs' argument fails because they have not and cannot dispute the existence of their mortgages or that the terms of their mortgage govern this dispute.

In response, Plaintiffs argue that they have sufficiently pleaded their claim for unjust enrichment because there is no "valid and enforceable contract" governing the subject matter of Plaintiffs' unjust enrichment. Rather, Plaintiffs insist that the subject matter of Plaintiffs' unjust enrichment claim is Defendants' fraudulent conduct, which is not covered by the contract. Plaintiffs also argue that they have alleged the absence of an adequate remedy at law at paragraph 189 of Plaintiffs' Amended Complaint.

■ The Eleventh Circuit Court of Appeals has stated that to state a claim for unjust enrichment, a plaintiff must plead the following elements:

(1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant has voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.

*Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999). It is well established that "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F.Supp.2d 1218, 1227 (S.D. Fla. 2013) (citing *Alberta Ltd. v. Netpaying, Inc.*, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011)); *see also Zarrella v. Pac. Life Ins.*

*Co.*, 755 F.Supp.2d 1218, 1227 (S.D. Fla. 2010).

In their Amended Complaint, Plaintiffs have failed to allege there is no contract governing the subject matter at issue. Only in their Opposition do Plaintiffs now assume the position that there is no "valid and enforceable contract governing the subject of Plaintiffs' unjust enrichment claim." Throughout their Amended Complaint, Plaintiffs allege that Defendants were unjust enriched by failing to disclose "that the property inspection fees and costs were not valid charges nor reasonable and appropriate." D.E. 53 ¶ 187. However, Plaintiffs cannot escape the fact that this language comes from the language within Plaintiffs' mortgage agreements.

Throughout their Amended Complaint, Plaintiffs cite to and incorporate language from their mortgage agreements. There is no question that an express contract exists governing the same subject matter in this case, and any unjust enrichment claim would ultimately fail as a matter of law. Though Plaintiffs have not previously been provided leave to amend their unjust enrichment claim, the Court finds any such amendment would be futile as an unjust enrichment claim cannot lie in this case where an express contract exists governing the same subject matter. *See Alhallaq v. Radha Soami Trading, LLC*, 484 Fed. Appx. 293, 298 (11th Cir. 2012) ("Because justice does not require district courts to waste their time on hopeless cases, leave may be denied of a proposed amendment fails to correct the deficiencies in the original complaint, or otherwise fails to state a claim."). Accordingly, Count 3 is dismissed with prejudice.

## III. COUNT 7: VIOLATION OF PLI-PA ON BEHALF OF JONES

█ Defendants move to dismiss Plaintiffs' PLIPA claim because Plaintiffs allege in a conclusory manner that Jones "paid property inspection fee charges to Defendants that are prohibited or in excess of those allowed by [PLIPA] or otherwise by law[,]" and this allegation fails to satisfy the pleading requirements of *Twombly* and *Iqbal.* In addition, Defendants insist that Plaintiffs will not be able to plead a PLIPA claim because the property inspection fee charges were explicitly authorized in the mortgage documents are not otherwise prohibited "by this act or otherwise by law."

Plaintiffs argue that in moving to dismiss Plaintiffs' PLIPA claim, Defendants ignore the detailed pleading incorporated into Plaintiffs' Seventh Claim for Relief, and Defendants "repeat [their] flawed argument that [their] self-serving and incorrect contract interpretation immunizes it from fraud." D.E. 60 at 19 n.10. Aside from this argument, Plaintiffs failed to provide any meaningful analysis in their opposition.

The Pennsylvania Loan Interest Protection Act ("PLIPA") permits a plaintiff to recover if she paid "a rate of interest in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law." 41 Pa. Stat. Ann. § 502.

The Court agrees with Defendants that Plaintiffs fail to point to any allegation in the Amended Complaint to demonstrate that Jones paid "a rate of interest in excess of that provided for by this act or otherwise by law or has paid charges prohibited or in excess of those allowed by this act or otherwise by law." D.E. 61 at 10 n.9. These allegations are conclusory, at best, and do not survive Defendants' Motion to Dismiss. Because Plaintiffs have previously been provided with an opportunity to amend their claims, the Court does not find that Plaintiffs' lackluster response

warrants additional leave to amend. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss First Amended Class Action Complaint (D.E. 58) is GRANTED. Plaintiffs' Amended Complaint (D.E. 53) is DISMISSED WITH PREJUDICE. It is further

ORDERED AND ADJUDGED that this case is CLOSED for administrative purposes.

DONE AND ORDERED in Chambers at Miami, Florida, this 27th day of June, 2017.