**LONRAY, INC., Plaintiff-Appellee,**

v.

**AZUCAR, INC., and Fireman's Insurance Company of New Jersey, Defendants-Appellants.**

No. 83–3550.

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1985.

James F. Moseley, Jacksonville, Fla., for defendants-appellants.

Robert T. Hyde, Jr., Jacksonville, Fla., for plaintiff-appellee.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

SIMPSON, Senior Circuit Judge:

Azucar, Inc., a warehouseman, and Fireman's Insurance Company of New Jersey, its insurer, appeal a judgment entered after a non-jury trial, holding them liable for breach of contract and negligence in the loss of 1,481,560 pounds of raw bulk sugar which was stored in Azucar's Jacksonville, Florida, warehouse pursuant to a written agreement providing for compensation, by Lonray, Inc., a merchant in sugar and other commodities. Although the action included additional claims and counterclaims, the issues raised on appeal are limited to whether the district court erred in holding Azucar liable and whether the damages were erroneously measured. Detailed findings of fact and conclusions of law have been published, *Lonray, Inc. v. Azucar, Inc.*, 568 F.Supp. 189 (M.D.Fla.1983). We shall limit our discussion accordingly.[1]

The district court pursuant to a written contract, found that Azucar received 67,-953,940 pounds of sugar for transportation and storage but redelivered only 66,472,380 pounds. Id. 191–92. Because there was no evidence how, why or when the sugar disappeared the court concluded that, under Florida law, the hired bailee's unexplained failure to redeliver the sugar was sufficient to establish a prima facie case of negligence. *Id.* at 193–94. Azucar attempted to rebut Lonray's case by proving that the sugar loss was either an unavoidable loss caused by normal, careful methods of storage and handling or was an illusion resulting from inaccurate measurements of a commodity which cannot be accurately weighed due to its hygroscopic nature. (568 F.Supp. 192, 194). The court rejected both of these explanations finding that the preponderance of the evidence established the accuracy of the weight tickets and that the proffered evidence of ordinary care and "normal" losses was insufficient to explain the total weight discrepancy. *Id.* at 192. Azucar was held liable in both tort and contract. *Id.* at 196.

The court awarded damages for the total amount of the lost sugar claimed by Lonray on the basis of the highest daily market

---

1. Fireman's Insurance does not challenge the findings of fact and conclusions of law which hold it liable under a policy insuring Azucar for "any liability it may incur under the law as a warehouseman", 568 F.Supp. at 193, 195. Therefore though we may refer to "the Appellants" we shall discuss the liability of the insured without further reference to the derivative liability of the insurer.

There is no question that the court's jurisdiction under 28 U.S.C. § 1331 was proven, *Id.* 191, and that, as stipulated in the bailment contract, Florida's Bailment law governs this action.

price reported at the closest sugar market during the entire bailment period, 43.13 cents per pound and a 3.39% premium, based upon the average polarization (a measurement of sweetness) of the sugar shipped from Azucar's warehouse. *Id.* at 192–93, 194. The court awarded additional damages for dead freight charges assessed by the shipper of the last barge loaded.[2] *Id.* 192, 194.

The appellants first argue that the court erred in failing to "interpret, apply or consider the agreement of the parties ..." and consequently held Azucar responsible for duties which were excluded by contract. The record reveals that the court received the agreement into evidence (plaintiff's exhibit 1), ordered and received argument on its applicability to the issues raised by the evidence (Transcript: 666–68, 673–722; record: 464–561) and referred to it in the opinion, 568 F.2d 191. We therefore infer that the court in fact considered the contract in the light of the evidence presented but found that the exclusions from duty were of no consequence to the action before it. The proper question for review is whether the court erred in ruling the exclusions inapplicable.

The initial brief identifies three exclusions which purportedly relieve them of all liability for Lonray's claim.[3] One exclusion provides that Azucar "... shall have no duty to inspect or examine the sugar to determine the ... quantity thereof." (Plaintiff's Exhibit 1, ¶ 3). A second exclusion provides in pertinent part that Azucar

"... shall not be responsible for shrinkage or loss in weight, or variations in weight due to atmospheric or other conditions ... any change or deterioration of the sugar due to changes in temperature, or other causes incident to general storage, or due to inherent qualities of the sugar...." (Plaintiff's Exhibit 1, ¶ 156) The third exclusion provides that Azucar shall not be liable for pest control or security of the premises. (Plaintiff's Exhibit 1, ¶ 15d) The entire contract, including these clauses, was drafted exclusively by Azucar (Record Transcript 429).

Under Florida law, exclusions from liability are strictly construed and all ambiguities are resolved against the drafting bailee. *Harbor One, Inc. v. Preston*, 172 So.2d 478, 479 (Fla. 3d Dist.Ct.App.1965). The appellants argue that the district court's opinion runs afoul of the exclusions because it imposes a duty upon the warehouseman to determine the quantity of the goods entrusted to him and because it allows a claim which is proven solely by a discrepancy in weight.[4] Their argument misstates the coverage of the exclusions.

■ The exclusion relieving Azucar of any responsibility for determining the quantity of sugar appears in a paragraph which describes the methods by which the sugar will be weighed, handled and stored. (Plaintiff's Exhibit 1, ¶ 3). It does not purport to impair the warehouseman's duty to use due care to return the entire quantity of goods returned to him nor does it render

---

**2.** The court also assessed prejudgment interest. 568 F.Supp. 195–96. The propriety of this award has not been questioned in this appeal.

**3.** A fourth provision (Plaintiff's Exhibit 1, ¶ 15a) quoted in the same section of the brief is no contractual exclusion at all but is merely a restatement of a Florida statute which provides that a warehouseman shall not be held liable for any loss which does not result from his failure to exercise such care in regard to stored goods "as a reasonably careful man would exercise under like circumstances ..." See, Fla.Stat. § 677.204(1) (1979). The appellants have made no showing that the court imposed a greater standard of care upon Azucar.

A relevant exclusion (Plaintiff's Exhibit 1, ¶ 15c2) provides that Azucar shall not be liable

for any damages arising out of "the normal, necessary and expedient requirements of loading the sugar.... Because it only purports to limit damages, the effect of this exclusion was properly raised in the liability section of the appellants' brief. However, because it is relevant to the questions concerning the sufficiency of the rebuttal evidence and the propriety of the damages awarded, it will be discussed, *infra.*

**4.** Appellants have presented no argument that Lonray's claim falls with security and pest control exclusion. Because there is no evidence that the sugar was damaged by pests or that the sugar was lost due to a breach of security and because the court's conclusion of liability is in no way dependent upon such a finding, we will not discuss the third exclusion.

the quantity of goods delivered irrelevant so long as he can prove that his warehouse was empty at the conclusion of delivery. In fact, the contract provides that Azucar shall charge handling fees of $10.00 per ton for loading the sugar into the warehouse and $8.05 per ton for delivering it at dockside. Consequently, the warehouseman is charged with the knowledge of the quantity of sugar received and the quantity of sugar delivered measured by weight. In context, the exclusion of responsibility for determining quantity merely permits (but does not require) the warehouseman to rely on the measurements of others in performing the contract. The exclusion is obviously inapplicable to the instant action which does not allege negligence in measurement.

Nor does the exclusion of liability for "loss of weight" preclude Lonray's claim for a lost quantity of sugar or provide that such a claim cannot be proven by a discrepancy in the weights of sugar delivered and received. By its very terms the exclusion applies only to any claim of liability asserted on the basis of a change in the weight of the undiminished quantity of sugar stored in Azucar's warehouse. Lonray did not claim that its sugar changed weight but that it received a lesser quantity of sugar than it entrusted to Azucar. We therefore conclude that the district court committed no error in failing to apply these exclusions to bar Azucar's claims.

In their second point, the appellants argue that the district court misapplied Florida law in presuming negligence from the loss of bailed goods of a "whimsical and mystical" nature[5] and which were jointly possessed by the bailor and the bailee. Florida law does restrict the application of a presumption of negligence, "[w]here the delivery of the thing is not complete, as when the owner remains with the thing [bailed] or has an independent agent or employee responsible for it or for certain aspects of its care...." *Stegemann v. Miami Beach Boat Slips, Inc.*, 213 F.2d 561, 565 (5th Cir.1954). The district court's pertinent historical findings are cryptic:

Azucar ... weighed out on Azucar's own scales and then transported by tarpaulin-secured trucks ... raw bulk cane sugar ... to the Azucar warehouse 568 F.Supp. 191, (findings of fact 4 & 5).

Notwithstanding the occasional visits of Markey & Sons to check the sugar. Azucar maintained exclusive custody and control of the sugar stored in the Azucar warehouse ...

*Id.*, (finding of fact 6).

... during the various load-outs of sugar from the warehouse ... Azucar personnel would scoop up the loose sugar with front-end loaders, and would place it onto a conveyor which would move the sugar onto a truck.

The truck bed would be covered and secured by a tarpaulin and the truck would proceed ... to Blount Island [dockside]. The scales used to weigh the sugar ... [at dockside] ... belonged to the Jacksonville Port Authority and were operated by Azucar personnel under the supervision of Markey & Sons, professional weighers and supervisors of commodity transactions. 568 F.Supp. 191–92 (findings of fact 3, 5, 7, 13–15).

■ The appellants assert that the Florida law allows the application of the presumption of negligence only where the bailee has *sole* and *exclusive* possession of the property and argue that the Court's implicit finding of possession is clearly erroneous because it is based in part upon an erroneous finding of historical fact and because it fails to take into account Lonray's participation (through its agents) in loading, handling, storage and weighing. We agree that the findings quoted above contain one clear error. There is no evidence that the dockside scales at the port authority were operated by Azucar personnel. However, we fail to find that the correction of the error would have had any effect on the court's ultimate finding of exclusive possession. At all pertinent times from load-in to load-out the sugar was in the

---

5. The evidence is summarized in the text accompanying note 6, *infra*. We do not discuss the nature of sugar in any depth because, as noted

below, defendants failed to relate the "whimsy" and "mystery" to changes in weight.

possession and custody of Azucar either in its warehouse or in the hopper of Azucar-hired trucks. It is undisputed that Lonray's agent, Markey & Sons, did supervise and observe the loading and weighing and did conduct bi-monthly visits of an hour's duration to the warehouse which were scheduled weeks apart to sample and inspect the immense quantity of sugar stored there and that a guard service, paid by Lonray but hired by Azucar, did visit the outside of the warehouse at random times after business hours. However, Azucar at all times maintained lock and key control over access to the interior of the warehouse and the sugar stored there (transcript: 96). We therefore cannot say that the district judge committed clear error in finding that the sugar was at all times held within Azucar's possession, custody and control. Cf. *Puritan Insurance Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502, 504 (11th Cir.1983) (under Florida law, delivery of chattel held complete where access was controlled by bailee). Consequently we find that the elements of possession necessary to establish the prima facie case of negligence were sufficiently proven.

■ The appellants' third point is that the district court erred in failing to find that they had presented sufficient evidence to rebut Lonray's prima facie case of negligence. The attempted rebuttal took three forms: (1) evidence that the apparent loss was only the illusory result of inaccurate measurements and the hygroscopic nature of sugar, (2) evidence that Azucar exercised ordinary care, (3) evidence that some loss was normal and incidental to the movement of sugar. The district court found that the weight tickets were of acceptable accuracy, 568 F.Supp. 192, but entered no findings concerning any effect the hygroscopic nature of sugar had upon the accuracy of the measurements. The proffered evidence of "normal" loss showed that the sugar industry recognized a .75% loss as normal in barge transportation of bulk sugar, a method of movement not involved in the instant claim. *Id.* The court concluded

that, regardless of relevancy, the .75% industry standard was insufficient as a matter of law to rebut the presumption of negligence because it failed to account for the total 2.17% loss. *Id.* 194. The evidence of ordinary care was also ruled legally insufficient. "It is not enough to show that the bailee used ordinary care if mysterious disappearance is the only explanation." *Id.*

The appellants' strongest evidence of inaccuracy shows that the scale printer at times malfunctioned (requiring hand notation of the weight tickets) and that there was at times an unexplained variation in the tare weights of the various trucks hauling sugar. (Transcript: 245-97) (Plaintiff's Exhibit 31, envelopes marked 7/24/80, 7/25/80) There is nothing in the record that shows that the hand notations were themselves inaccurate or that the variation in tare weight necessarily affected the accuracy of the measurement of net weight. The notations indicate that for every variation in tare weight there is a reasonably related variation in the gross weight; in the final results, the net weights all appear to be within reasonable limits. We cannot conclude from this evidence that the district court erred in finding the scales and measurements of acceptable accuracy based upon the hand notation, the tare weight variation or any other evidence presented below. Nor do we find that the court erred in failing to find that the hygroscopic nature of sugar rendered weight an unreliable measure of the quantities of sugar received, delivered or lost. The testimony in the record shows that sugar is hygroscopic and changes form, texture, volume and appearance with variations in the humidity of the surrounding atmosphere.[6] Notably missing is any evidence that a given quantity of sugar can change weight under normal storage conditions. Though such a weight change in sugar scientifically recognized phenomenon, the court was under the existence of such a fact which is clearly the subject of expert testimony.

---

6. In fact, the testimony showed that all trade in sugar is conducted by weight because the vol-

ume and texture of sugar do easily change. (Transcript: 28-31).

We therefore conclude that the court committed no clear error in finding that the weight tickets were of sufficient accuracy and that a loss of sugar was indeed proven.

■ Nor can we find error in the court's conclusion that the evidence of ordinary care was legally insufficient to rebut the presumption of negligence because the bailees failed to explain the cause of the loss. The appellants argue that this ruling contradicts *Insurance Co. of State of Pennsylvania v. Estate of Guzman,* 421 So.2d 597, 601–02 (Fla. 4th Dist.Ct.App. 1982). *Guzman* held that the presumption of a bailee's negligence "vanishes" from the case once some "evidence contradicting the presumption" is introduced. *Id.* No Florida case specifically states whether the bailee is also obligated to present some evidence of the cause of the loss in meeting its burden of going forward with the evidence. In all reported opinions the immediate cause of the loss was known. However, the Supreme Court opinion upon which the *Guzman* court expressly relied describes the type of information which the bailee must present in meeting his burden of going forward with the evidence:

The burden of proof in a litigation, wherever the law has placed it, does not shift with the evidence, and in determining whether petitioner has sustained the burden the question often is, as in this case, what inferences of fact he may summon to his aid. In answering it in this, as in others where breach of duty is the issue, the law takes into account the relative opportunity of the parties to know the fact in issue and to account for the loss which it is alleged is due to the breach. Since the bailee in general is in a better position than the bailor to know the cause of the loss and to show that it was one not involving the bailee's liability, the law lays on him the duty to come forward with the information available to him ... If the bailee fails, it leaves the trier of fact free to draw an inference unfavorable to him upon the bailor's establishing the unexplained failure to deliver the goods safely. ...

*Commercial Molasses Corp. v. New York Tank Barge Corp.* 314 U.S. 104, 110–11 [62 S.Ct. 156, 160–61, 86 L.Ed. 89] (1941) (citations omitted).

Our reading of *Commercial Molasses* convinces us that the bailee meets his burden of going forward with the evidence in a case in which the immediate cause of the loss is neither obvious nor known to the bailor only when he first introduces evidence of the manner in which the loss occurred and then introduces evidence that he exercised due care to prevent loss due to such cause. Consequently, we agree with the district court that the appellants' evidence of care was insufficient to rebut presumption of negligence arising from the mysterious and unexplained loss of sugar.

■ We are not so confident that the appellants' rebuttal was legally insufficient merely because the evidence proffered failed to account for the total loss. In the instant case, a bailee who had specifically disclaimed liability for losses caused by "the normal necessary and expedient requirements of loading the sugar," was denied the opportunity to show that part of the losses claimed by the bailor was caused by losses inherent in the careful transportation of sugar. Neither logic nor the authority cited by the district court, *I.C.C. Metals, Inc. v. Municipal Warehouse Co.,* 50 N.Y.2d 657, 431 N.Y.S.2d 372, 377 n. 3, 409 N.E.2d 849, 853 n. 3 (1980) support such a result. Without prejudging the relevancy of the evidence proffered below, we remand the case to the district court to determine whether the bailor, who has been affirmatively found to have exercised "great care" in the movement of sugar has presented evidence that sugar was nevertheless lost in movement and if the court finds sufficient evidence to quantify the loss, to credit the appellant accordingly.

The appellants also seek reversal of the damages awarded, 43.13 cents per pound, a 3.38% premium and dead freight charges. Inasmuch as the price of sugar varies daily and the date of the loss was unknown, the district court based its award on the highest daily market price quoted from the date of call-out until the last day of loading, 43.13 cents per pound, quoted on Novem-

ber 5, 1980. The court cited no Florida opinion or other direct authority for this measure of damages 568 F.Supp. at 194. The appellants argue that *Proctor & Gamble Distributing Co. v. Lawrence American Field Warehousing Corp.* 16 N.Y.2d 344, 266 N.Y.S.2d 785, 213 N.E.2d 873 (1965), the New York authority cited as analogous by the district court, is inapplicable to this case because it states a measure of damages appropriate to a case for conversion, which was neither proven nor pleaded by the appellee and because it allows a recovery greater than the "actual damages" Florida allows in claims for a bailee's negligence. Notwithstanding that Florida law does differ from New York law in the elements required for proof of a bailee's conversion of goods, *compare Id. with Sanfisket, Inc. v. Atlantic Cold Storage Corp.* 347 So.2d 647 (Fla. 3d Dist.Ct. App.1977), appellants' argument that the measure of damages adopted by the New York court in *Proctor & Gamble Distributing* was intended to be applicable only to actions for conversion conflicts with the language of that opinion:

> This rule should not be applied to the advantage of the warehouseman and the detriment of the bailor if the warehouseman pleads ignorance of the date on which the property disappeared. In order that a bailee may not be permitted to take advantage of his own wrong where the subject of the bailment has been *negligently lost or misappropriated* it follows that the bailor should be awarded damages measured by the highest value of the property between the date when the bailment commenced and the date when the bailor has received notice that the property has been lost [Citation omitted].
>
> 266 N.Y.S.2d at 789, 213 N.E.2d at 877 (Emphasis supplied).

Nevertheless, we must reverse the district court's award because Florida law, apparently in contradiction to New York law, limits the recovery of damages in bailment actions to the price which would have been realized by the bailor had the bailee's negligence not occurred. *E.S.I. Meats, Inc. v. Gulf Florida Terminal Co.*, 639 F.2d 1348, 1353 (5th Cir.1981). Judged by this standard, the evidence presented below fails to support the damages awarded. The sugar was not sold and the loss was not discovered until January 28, 1981, the last day of loading, when the parties discovered that there was insufficient sugar to complete the loading of the barge named, "ATC–6000" (Transcript: 263). Therefore no sale could have been realized before that date. The high market price, quoted weeks earlier is therefore irrelevant. The sugar loaded on the ATC–6000 was sold after the barge was loaded but before it left the Port of Jacksonville, for a price of 31.58 cents per pound, "C.I.F. Baltimore, Maryland", a price which includes in a lump sum the costs of goods, insurance and freight, see Fla.Stat. 672.320(1) (1979) ("C.I.F." defined) (Transcript: 620–23). The profits on this sale were diminished by dead freight charges assessed for the partially filled barge. At that same time, sugar was selling at a spot market price of 26.32 cents per pound (Plaintiff's Exhibit 13) and the sugar was of such a quality that the industry would pay a 3.38% premium over the spot price, 568 F.2d 193. The largest award this evidence supports, then, is the greater of either the contract price which established what one specific buyer would actually have paid for Lonray's sugar including freight and premiums (in which case no double recovery of freight charges and premiums would be allowed) or the market price plus the premiums and the dead freight charges to account for lost profits and to reimburse actual losses. Because we have remanded the questions concerning liability for part of the losses found by the district court, and because the outcome of that issue will necessarily affect the amount of damages awarded, we also remand this case to the district court for recalculation of damages consistent with this opinion.

The judgment of the district court is AFFIRMED generally as to liability, REVERSED and REMANDED for findings whether any non-negligent losses were proven and REVERSED and REMANDED for the recalculation of damages.