[ PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13719

_____

GLOBAL NETWORK MANAGEMENT, LTD.,

Plaintiff-Appellant,

*versus*

CENTURYLINK LATIN AMERICAN SOLUTIONS, LLC,
a Florida Limited Liability Company
f.k.a. Level 3 Latin American Solutions, LLC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20723-JB

_____

Before WILSON, JORDAN, and BRASHER, Circuit Judges.

JORDAN, Circuit Judge:

This diversity case arises out of the theft—possibly by a group of third-party contractors—of 1,380 memory cards which belonged to Global Network Management, LTD., and were stored in a data center operated by Centurylink Latin American Solutions, LLC. Global Network sued Centurylink for implied bailment, breach of contract implied in law, and breach of contract implied in fact to hold Centurylink liable for the theft of the memory cards. The district court dismissed all of the claims with prejudice, and Global network now appeals.

Applying Florida law, and with the benefit of oral argument, we affirm in part and reverse in part. The district court correctly dismissed the contract implied in law and contract implied in fact claims. But Global Network plausibly alleged that Centurylink possessed the memory cards at the time of the theft, and as a result the implied bailment claim survives at the Rule 12(b)(6) stage.[1]

I

We exercise plenary review of the dismissal of a complaint for failure to state a claim. *See Dorfman v. Aronofsky*, 36 F.4th 1306, 1311–12 (11th Cir. 2022). In conducting this review, we

_____

[1] As to all other issues raised by Global Network, we summarily affirm.

accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *See id.* at 1310.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the factual allegations in the complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted).

The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). The question, therefore, is whether a claim is "substantive[ly] plausib[le]." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

## II

The operative complaint alleges the following facts.

Centurylink operates a data center in Miami, Florida, that houses Global Network's servers. Those servers store and process Global Network's data.

From 2014 through 2018, the parties and some of their predecessors and related entities signed a series of contracts for data

storage and processing services: (1) in 2014, Telegram Messenger LLP and Level 3 Communications GmbH (later acquired by Centurylink) signed a master service agreement; (2) in 2015, Telegram Messenger LLP and Level 3 signed a U.S. addendum agreement to add provisions specific to services rendered in the United States; (3) in 2017, Telegram Messenger LLP and Level 3 signed a letter agreement which canceled the 2014 master service agreement and executed a new one; and (4) in February of 2018, the parties signed (a) a novation agreement substituting Global Network for Telegram Messenger LLP in the 2017 master service agreement, and (b) a novation agreement substituting Global Network for Telegram Messenger LLP in the 2015 addendum. Each of these contracts was attached to the complaint, and Global Network expressly alleged that the parties were "bound" by them. *See* D.E. 24 ¶ 14.

In a paragraph titled "Security," the operative contract—the master service agreement signed in 2017—requires that Centurylink maintain "card readers, scanners [or] other access devices" at its facility. *See* D.E. 24-3 at 16. It also requires that Centurylink provide a "locking mechanism" for the facility. *See id.*

Global Network placed orders for two deliveries of 224 servers (each of which contained eight 128-megabyte memory cards). The servers were delivered to Centurylink's data center in November of 2017 and April of 2018. Global Network hired a Centurylink employee named Diego Oubina to install the servers, and Mr. Oubina in turn hired outside contractors to do the job. He let these contractors into the data center to install the servers in November

21-13719                Opinion of the Court                5

and again in April.  After the April installation, Global Network discovered that 1,380 memory cards were missing.

According to Global Network, Mr. Oubina circumvented all the data center's extensive security protocols when he let the contractors inside.  Those security protocols included the use of key access cards, metal detectors, cameras, and elevator key pads.

The sixth floor of the data center, where Global Network's servers are stored, is protected by doors made of break-resistant glass and security cameras.  Visitors to the data center—including the owners of the servers stored there—are required to obtain a ticket to enter, and are escorted by security guards to their destination and back to the entrance when they leave.  But on the days the contractors came to install Global Network's servers, Mr. Oubina allowed them to bypass these security measures—they did not obtain tickets to enter and they were not escorted to the sixth floor and back out to the lobby.

### III

Global Network asserted a claim for breach of contract implied in law.  The district court properly dismissed this claim with prejudice.

Florida courts use the term "contract implied in law" interchangeably with "unjust enrichment" and "quasi contract."  *See 14th & Heinberg, LLC v. Terhaar and Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880 (Fla. 1st DCA 2010) ("an implied-in-law 'quasi-contract' . . . is also referred to by some courts as unjust

enrichment") (internal citation omitted).   In Florida, a contract implied in law exists where "the parties . . . have never by word or deed indicated in any way that there was any agreement between them." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (citing *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (en banc)). The law will "create" this sort of implied agreement where "it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Id.*

The elements of a cause of action for a contract implied in law are that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred[;] and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value." *Com. P'ship*, 695 So. 2d at 386.   The legal fiction of a contract implied in law "was adopted to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation." *Id.*

Global Network alleges that it paid Centurylink for services that included security, and that Centurylink "made the representation that it would provide security."   Then Centurylink, "having received the benefit of the money," purportedly "failed to properly secure [Global Network's] servers[.]"   These allegations do not plausibly set out a claim for breach of a contract implied in law.

First, we reject Global Network's attempt to base the claim on Centurylink's representation that it would provide security. This representation cannot serve as the basis for Centurylink's claim because a contract implied in law is an obligation "created by the law without regard to the parties' expression of assent by their words or conduct." *Com. P'ship*, 695 So. 2d at 386. Global Network's focus on Centurylink's alleged promise is misguided and cannot support a claim for breach of contract implied in law.

Second, even if we ignore this foundational problem the claim still fails. Global Network alleged that there was an express agreement governing the relationship between the two parties, and the 2017 contract sets out Centurylink's obligations regarding security. When a contract addresses a certain topic, that topic cannot be the subject of a claim for a contract implied in law. *See Diamond "S" Development Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter."); *Ocean Communications, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007) ("A plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."); 42 C.J.S. *Implied Contracts* § 62 (2023 update) ("[F]or a court to award a quantum meruit recovery, the court must conclude that there is no enforceable express contract between the parties covering the same subject matter.").

Global Network's assertion that the parties did not sign a separate, stand-alone agreement for security services does not change this outcome. Global Network paid Centurylink pursuant to the contracts that the parties entered into for data storage and processing services, and Global Network alleged that the "parties were bound by [those] contract[s]." D.E. 24 ¶ 14. As explained earlier, the 2017 contract required Centurylink to take certain security measures to protect Global Network's property. [2]

In a paragraph titled "Security," the 2017 contract requires that Centurylink maintain "card readers, scanners [or] other access devices." D.E. 24-3 at 16. The contract also requires that Centurylink provide a "locking mechanism" for the facility. *See id.* Global Network may not assert an implied-in-law contract claim because it made payments pursuant to a contract that addressed the matter of security. And it may not now demand higher security measures than those that were bargained for. *See* 42 C.J.S. *Implied Contracts* § 60 (2023 update) ("[A] court may not make a better contract for the parties through an unjust enrichment claim than they have made for themselves."). [3]

─────────────────

[2] Global Network argues in its initial brief that "[t]he various agreements attached to the [c]omplaint are not even contracts between the parties." Initial Br. at 17. This argument is meritless, as Global Network expressly alleged that the parties "became bound by the contractual relationship." D.E. 24 ¶ 14.

[3] Of course, if Centurylink failed to provide the security services or features spelled out in the 2017 contract, and those failures led to the theft of the memory cards, the remedy available to Global Network was a straightforward breach of contract claim. Global Network initially asserted certain breach of

21-13719                Opinion of the Court                9

There is also no allegation that Global Network paid Centurylink any additional money for security above and beyond what was owed pursuant to the parties' 2017 contract.  Absent this kind of allegation, there is nothing inequitable about Centurylink retaining the contractual payments made by Global Network.  *Compare Ruck Bros. Brick, Inc. v. Kellogg & Kimsey, Inc.*, 668 So. 2d 205, 206–07 (Fla. 2d DCA 1995) (holding that an unjust enrichment claim was valid because the contract payments did not include additional material delivery).

## IV

Global Network also asserted a claim for breach of contract implied in fact.  As the district court correctly explained, this claim similarly fails because of the well-settled rule that "the law will not imply a contract where a valid express one exists."  *Quayside Assoc., Ltd. v. Triefler*, 506 So. 2d 6, 7 (Fla. 3d DCA 1987).

Unlike contracts implied in law, parties to contracts implied in fact "have . . . entered into an agreement[.]" *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 (11th Cir. 1999) (quoting *Com. P'ship*, 695 So. 2d at 385–86).  "[B]ut [they have done so] without sufficient clarity, so a fact finder must examine and interpret the parties' conduct to give definition to their unspoken agreement." *Id.*  A contract implied in fact is "founded upon a meeting of the minds, which, although not embodied in an express contract,

_____

contract claims, but at some point those claims were dismissed.  Global Network does not appeal the dismissal of those claims, so we do not address them.

is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996). *See also Tipper v. Great Lakes Chemical Co.*, 281 So. 2d 10, 13 (Fla. 1973) ("Express contracts and contracts implied in fact require the assent of the parties, whereas contracts implied in law . . . do not rest upon the assent of the contracting parties.").

Global Network contends that it can be inferred—from Centurylink's use of various security protocols—that the deal included promises that Centurylink would keep the servers safe and that it would conduct an investigation if property was lost. But a court will not imply a contract in fact where there is an express agreement addressing the matter at hand. *See Baron v. Osman*, 39 So. 3d 449, 451 (Fla 5th DCA 2010) ("[T]he law will not recognize an implied-in-fact contract where an express contract exists."). *See also Triefler*, 506 So. 2d at 7 (the "settled rule [is] that the law will not imply a contract where a valid express one exists"). As previously discussed, the 2017 contract provided the negotiated-for security measures. Because Global Network alleged that this contract constituted a binding agreement, we will not imply another contract to replace the parties' agreed-upon terms.

## V

The district court dismissed the implied bailment claim because Global Network did not sufficiently allege that Centurylink had exclusive use and possession of the property (i.e., the servers and the memory cards). Based on our decision in *Puritan Insurance*

*Company v. Butler Aviation-Palm Beach, Inc.*, 715 F.2d 502, 504 (11th Cir. 1983), we disagree.

## A

"In a bailment situation, the plaintiff makes a prima facie case for damages when he shows that the bailed property was delivered to the bailee in good condition and that it was damaged while it was in the care, custody, and control of the bailee." *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1299 (11th Cir. 2007) (applying Florida law). Under Florida law, a bailment "requires complete delivery of possession, custody and control of the chattel." *Butler Aviation*, 715 F.2d at 504. As a "general rule, delivery of the item to the bailee must give him or her the right to exclusive[ly] use and possess[ ] the item." *Meeks ex rel. Estate of Meeks v. Fla. Power & Light Co.*, 816 So. 2d 1125, 1129 (Fla. 5th DCA 2002).

As noted, Global Network's claim is for implied bailment. Florida law recognizes that a "constructive bailment" can result when "the possession of one's personal property passes to another by mistake, accident or through force of circumstances under which the law imposes upon the recipient thereof the duty and obligation of a bailee . . . [and] an absence of any voluntary undertaking, and no reasonable basis for implying an intent of any mutual benefit[.]" *Armored Car Service, Inc. v. First Nat. Bank of Miami*, 114 So. 2d 431, 434 (Fla. 3d DCA 1959). *See also* 8A Am. Jur. 2d *Bailments* § 38 (Nov. 2022 update) ("An implied-in-law bailment also may arise when a party engages another to perform some

service with respect to that party's personal property, without instructions as to the property's disposition."); 8 C.J.S. *Bailment* § 14 (Nov. 2022 update) ("[T]here is a class of bailments that arise by operation of law, such as when justice requires it."); 19 Williston on Contracts § 53:3 (4th ed. 2022) (recognizing the concept of "constructive bailment").

The "duty imposed in such circumstances [is for] the bailee to exercise some care, the degree thereof to be determined by the facts relating to the bailment." *Armored Car Service*, 114 So. 2d at 435. But where the bailment is gratuitous a showing of gross negligence is required for recovery. *See id.* at 434; *Fireman's Fund Ins. Co. v. Dollar Systems, Inc.*, 699 So. 2d 1028, 1031 (Fla. 4th DCA 1999).

## B

In *Butler Aviation*, an aircraft owner left his plane with a fixed base operator at the Palm Beach Airport. The operator tied down and stored the plane. *See* 715 F.2d at 503.

The operator controlled the area, which was surrounded by a perimeter fence maintained by the county, by stationing a security guard at its access gate and a dispatcher at the service counter at the other entrance. It also had one of its employees conduct a nightly check to see what aircraft were in the parking area. *See id.*

No key was needed to operate the plane, but the owner retained a key and gave another key to a third party who planned to use the plane for business purposes. *See id.* at 504. A day after

leaving the plane, the owner returned.  He put his flight case in the wing locker and relocked the plane, but did not move it.  A little more than a week later, an unknown person entered the lot, paid the parking and refueling charges, and stole the plane.  *See id.*

We affirmed a jury verdict for the plane owner on a bailment claim under Florida law because the operator had practical control of the aircraft, notwithstanding the owner's access: "The facts that we have set out—a fenced area, control of the access gate, a dispatcher on duty, registration procedures, placement and tying down of the plane by [the operator], and a nightly check—indicate that [the operator] had control of the aircraft and was properly considered a bailee.  Although [the owner] retained his key (and sent another to a third party) practical control remained with [the operator]."  *Id.*

Based on *Butler Aviation*, Global Network plausibly alleged that Centurylink had practical physical control over the servers and the memory cards in its data center.  The alleged facts—the use of key access cards, elevator key cards, and security cameras, as well as the requirements for visitors (including owners like Global Network) to obtain entrance tickets and be accompanied by a security guard to and from the data center—plausibly indicate that Centurylink was a bailee.  *See id.  See also Lonray, Inc. v. Azucar, Inc.*, 775 F.2d 1521, 1525 (11th Cir. 1985) (holding under Florida law that a warehouse owner had sole possession and control of the sugar it stored for the plaintiff, even though the plaintiff's agent supervised the loading and weighing of the sugar and visited the warehouse

twice a month for inspections, because "at all times [the warehouse owner] maintained lock and key control over access to the interior of the warehouse and the sugar stored there"). Given cases like *Butler Aviation* and *Lonray*, Global Network has stated a claim for implied bailment.

According to Centurylink, Global Network's ability to visit the servers means that it did not possess the servers exclusively and as a result no bailment relationship was formed. But this argument does not carry the day at this stage of the proceeding, where the standard is plausibility and not probability. The plane owner in *Butler Aviation* was able to visit and access his aircraft (and did in fact do so), and yet we concluded that a bailment existed. *See* 715 F.2d at 504. And in *Lonray* there was a bailment even though an agent for the owner visited the warehouse twice a month for inspections of the sugar. *See* 775 F.2d at 2525.

## C

Centurylink also argues that *Butler Aviation* is distinguishable on its facts because Global Network was able to use its servers remotely to run its business, while the plane owner in *Butler Aviation* could not use the plane from afar while it was stored with the fixed base operator. Centurylink contends this continued use precludes us from concluding that an implied bailment existed. The district court essentially agreed, explaining that bailment does "not contemplate" a situation where one party's possession of property does not prevent the owner from using it. *See* D.E. 35 at 7–8.

We are not persuaded. First, although Global Network may have been able to continue to use its servers, it was not able to use the property that was stolen—the memory cards. Second, Global Network does not seek damages for its inability to use its network or intangible data on the servers. Instead, it wants to recover damages to replace the physical memory cards. *See* D.E. 24 ¶ 66. The bailment analysis in a case like this one, dealing with the loss of tangible, physical objects, is relatively straightforward. *See DW Data, Inc. v. C. Coakley Relocation Sys., Inc.*, 951 F. Supp. 2d 1037, 1048–53 (N.D. Ill. 2017) (applying Illinois law and finding, after a bench trial, that plaintiff was entitled to judgment on its bailment claim against the defendant, which lost its servers after delivery). [4]

In addition, Centurylink cites to *S & W Air Vac Systems, Inc. v. Department of Revenue*, 697 So. 2d 1313, 1315 (Fla. 5th DCA 1997). In *S&W*, the Fifth District addressed whether S&W's placement of "air-vac" units at convenience stores and gas stations—units which customers could use for a fee to vacuum their car or put air in the tires—created a bailment. It held that there was no bailment because only S&W had keys to a unit's money vault, and

---

[4] The tort of trespass to chattels, which Florida recognizes, *see Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 805 So. 2d 835, 846 (Fla. 4th DCA 2001), has been applied by some courts to the loss of use of computer networks or servers. *See, e.g., Register.com v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (New York law). Whether or not Florida applies the tort in this way is unclear. *Compare Flagstone Island Gardens, LLC v. Ser*, 2011 WL 13223685, at *6 (S.D. Fla. Sept. 13, 2011) (yes), *with Inventory Locator Servs., LLC v. Partsbase, Inc.*, 2005 WL 2179185, at *11 (W.D. Tenn. Sept. 6, 2005) (no).

it was solely responsible for (a) inspecting and maintaining the units at no cost to the business owners and (b) carrying liability insurance for the units.  In sum, the business owners did not have exclusive possession of the units.  *See id.* at 1214–1215.

*S&W* makes the exclusive possession element of bailment somewhat closer.  But it does not mandate dismissal of the implied bailment claim because of two significant distinctions.  The first is that the units in *S&W* (unlike Global Network's servers) were not locked inside the businesses but were instead located outside where they could be accessed by cars. The second is that S&W (unlike Global Network) was "authorized to enter the [premises] at any time to collect monies or perform maintenance and repairs." *Id.* at 1314–15.

Given Global Network's allegations, and our decision in *Butler Aviation*, the implied bailment claim survives Centurylink's motion to dismiss.  To be clear, we do not hold there was an implied bailment as a matter of fact or law.  We hold only that Global Network plausibly alleged an implied bailment.  *Cf. Annecca, Inc. v. Lextent, Inc.*, 345 F.Supp.2d 897, 908 (N.D. Ill. 2004) (explaining that, under Illinois law, an implied bailment existed when the plaintiff delivered its new computer servers to the defendant "to be installed for [the plaintiff's] own use after completion of [its] acquisition [of the defendant]").

## VI

We affirm the dismissal of Global Network's claims for breach of contract implied in law and breach of contract implied in fact. We reverse the dismissal of Global Network's claim for implied bailment and remand for further proceedings.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.